CASE 76—PETITION EQUITY—JANUARY 22.

96   459
.d106  785
.d106  786

# Woodbury v. Turner, &c., Manufacturing Co.

APPEAL FROM JEFFERSON CIRCUIT COURT, CHANCERY DIVISION.

WHERE A VENDEE OF REAL ESTATE DEPOSITS A SUM OF MONEY AS A GUARANTY FOR THE PERFORMANCE OF HIS CONTRACT, which stipulates that the sum deposited, in the event of the vendee's failure to comply with the contract, is to be received by the vendor in full satisfaction of all claims against the vendee for any damages from such breach of contract, and in the event of the completion of the contract by both parties is to be regarded as a payment on the purchase price, the sum deposited will be treated as liquidated damages, and may be retained by the vendor, in the event of a breach by the vendee, if the damages arising from the breach are uncertain and not capable of being ascertained by any satisfactory and known rule.

A manufacturing corporation entered into a contract with the chief manager of a rival in business, agreeing to sell to him its plant and stock and also the good will of its business, the sum of $246,000, "in cash," to be paid for the plant and good will on a day about ten months in the future, when the title was to be transferred, the vendee in the meantime to have free access to the books of the vendor for the purpose of ascertaining the earning capacity of the business. The contract recited the deposit by the vendee with a trust company of twenty-five thousand dollars as a guaranty for the performance of his contract, this sum in the event of his failure to complete the contract to be received by the vendor "in full satisfaction of all claims" against the vendee "for any damages arising from such breach of contract," and in the event of the completion of the contract by both parties, to be treated as a payment on the purchase price. By a modification of the original contract the time for the completion of the contract by the vendee was extended several months and the sum deposited as

a guaranty was paid to the vendor with a stipulation that he was to repay it in the event of his failure to carry out the contract. The vendee having failed to complete the contract within the extended time, *Held*—That the vendor is entitled to retain the twenty-five thousand dollars as liquidated damages, it being impossible to ascertain the damage he has suffered.

ROZEL WEISSINGER FOR APPELLANT.

1. The twenty-five thousand dollars was deposited as a guaranty fund, not as liquidated damages. (Pomeroy's Equity, sec. 433; Hahn v. Horstman, 12 Bush, 254; 1 Sedgwick on Damages, 8th ed, sec. 408; Chaude v. Sheppard, 122 N. Y., 397.)

2. If the twenty-five thousand dollars be not a guaranty fund, then it must be treated as a partial payment, and under the circumstances of this case can be recovered back by Woodbury, less appe lee's actual damage. (Bishop on Contracts, secs. 1443, 1444, 1445; Sunflower Oil Co. v. Wilson, 142 U. S., 313; Gilbreth v. Grewell, 13 Ind., 485; Dantzeizer v. Cook, 40 Ind , 66; Preston v. Whitney, 23 Mich., 267; Hays v. Jordan, 85 Ga., 741; Lincoln v. Quynn, 11 Atl. Rep, 848; s. c. 68 Md., 289; Latham v. Davis, 44 Fed. Rep., 862; Harper v. Claxton, 62 Ala., 46; Lomax v. Bailey, 7 Blackf., 499; Wolf v. Gerr, 43 Iowa, 339; Bassett v. Sanborn, 9 Cush., 58; Lee v. Ashbrook, 14 Mo., 378; s. c., 55 Am. Dec., 110.)

3. Cases explained and criticised: Chase v. Allen, 13 Gray, 42; Hinton v. Sparks, L. R. 3, C. P. Cases, 161; Swift, &c., v. Powell, 44 Ga., 123; Perzell v. Shook, 53 N. Y. Sup. Ct., 501; Matthews v. Sharp, 99 Pa. St., 560; Eakin v. Scott, 70 Texas, 442; Gobble v. Linder, 76 Ill., 157; Stillwell v. Temple, 28 Mo., 156; Hansbrough v. Peck, 5 Wall., 497; Haynes v. Hart, 42 Barb, 58; Green v. Green, 9 Cowan, 49; Chrisman v. Miller, 21 Ill., 236; Ketchum v. Evertson, 13 Johns., 364.

HUMPHREY & DAVIE OF COUNSEL ON SAME SIDE.

P. B. MUIR FOR APPELLEE.

1. The twenty-five thousand dollars when "deposited," and certainly when actually "paid," must be regarded either as "liquidated damages," or as the price paid for "an option" It is immaterial which is true in this case. For, whether the one or the other, the appellant put it beyond his power ever to recover it by failing, without the fault of appellee, to perform his contract. The twenty-five thousand dollars can not be treated as a "penalty" on any tenable ground whatever. (Chase v. Allen, 13 Gray, 42; Hinton v Sparks, L. R, 3 C. P. Cases, 161; 2 Wharton on Contracts, sec. 743; Lea v. Whittaker, L. R. 8, C. P. P., 70; Swift, Hamberger & Co. v. Powell, 44 Ga., 123;

Woodbury v. Turner, &c., Manufacturing Co.

Perzell v. Shook, 53 N. Y. Sup. Ct., 501; Gobble v. Linder, 76 Ill., 157; Shasson v. Beale, 7 Johns., 72; Knapp v. Mallby, 13 Wend., 587; Tingley v. Cutler, 7 Conn., 291; Steeple v. Williams, 48 P. St., 450; Meade v. Wheeler, 13 N. H., 351; Stillwell v. Temple, 28 Mo., 156.)

2. If, as contended by appellant, the twenty-five thousand dollars was paid "in part performance" of the contract, yet, as appellee was never in default, and appellant alone was guilty of non-performance of the residue of the contract, there can be no recovery of the money so paid, and, therefore, this suit was properly dismissed by the chancellor. (Hansbrough v. Peck, 5 Wall, 497; Haynes v. Hart, 42 Barb., 58; Green v. Green, 9 Cow., 49; Chrisman v. Miller, 21 Ill., 236; Ketchum & Swett v. Evertson, 13 Johns., 364.)

3. Cases reviewed: Gilbreth, v. Grewell, 13 Ind., 485; Danzeizer v. Cook, 40 Ind., 66; Cook v. Brandeis & Crawford, 8 Met., 555; Hahn v. Horstman, 12 Bush, 254; Latham v. Davis, 44 Fed. Rep., 863; Sunflower Oil Co. v. Wilson, 142 U. S.

JAMES S. PIRTLE AND MUIR, HEYMAN & MUIR COUNSEL FOR APPELLEE.

JUDGE HAZELRIGG DELIVERED THE OPINION OF THE COURT.

In the latter part of the year 1888, the appellant, Woodbury, then chief manager of a handle manufactory at Knoxville, Tenn., conceived the design of securing control of the business and property of all the handle manufactories in the United States—of which there were some six or eight—and selling the whole as one concern to a company of English capitalists.

The largest and perhaps the most prosperous of these companies was that of the appellee, a corporation doing business at Louisville, Ky., to the managers of which, the appellant, in November, 1888, applied for a statement of the price at which they would sell their entire business.

He was met with the statement that it was not for sale; but upon further conference, a written contract was entered into by which the appellee agreed to sell

and the appellant to buy the entire plant. The time fixed, however, for the payment of the purchase price was in the future, and at the demand of the appellee the sum of twenty-five thousand dollars was deposited by the appellant in the hands of the Fidelity Trust and Safety Vault Company of Louisville, the ultimate disposition of which fund was provided for in the contract. Upon the approach of the time when the trade was to be fully consummated, the appellant, still confident, as he had all along been, of bringing the pending negotiations with his English associaties to a successful close, found that he required longer time within which to raise the necessary funds to purchase the large properties indicated. Upon application to the appellee, further time was given, but on somewhat different terms ; and a second contract was entered into between the parties, in which the twenty-five thousand dollars heretofore on deposit was paid to the appellee.

When the time finally arrived under the extension contract for the completion of the purchase, the appellant failed to comply with his undertaking. Thereafter he demanded of the appellee a return of the twenty-five thousand dollars, and, this being denied him, he brought this action.

No grievances against the appellee worthy of consideration are set out in the petition. After giving a history of the transaction, and setting forth the contents of the two contracts, the appellant, in effect, admits substantial performance on the part of the appellee, and his own inability, after a hard and fruitless struggle, to complete his agreements under either

contract.   He charges, however, "that said twenty-five thousand dollars was a *penalty*, and was paid without any consideration; * * that the actual loss or damage suffered by defendant does not exceed the sum of one thousand dollars ;" and he prays "that the defendant be compelled to state the amount of its actual loss and damage by reason of the plaintiff's failure to complete said contract, and for judgment for twenty-five thousand dollars ($25,000), less such loss or damage as the same may be established," &c.

Manifestly, the rights of the parties are controlled by the contracts, and, omitting the descriptive parts and other matters not in issue, section one of the first contract, dated March 16, 1889, reads as follows :

I. The party of the first part hereby agrees to sell to the party of the second part all its lands, leases, mills, milling property, buildings, machinery patterns, stocks, raw and wrought, and in process of manufacture, and all its other property of every description on hand at the time hereinafter mentioned (except cash, contracts, book and ledger accounts, and other debts and demands due the party of the first part), the same constituting its entire plant and materials of manufacture, and also the good will of its business, which real estate is described as follows :   *   *

(a). For plant and good will, the sum of two hundred and forty-six thousand dollars ($246,000) in cash to be paid on the first day of August, 1889, or sooner on notice as hereinafter provided, at twelve o'clock noon, at the office of the Farmers' Loan and Trust Company, in the city of New York, at which time and place the conveyances and other documents nec-

essary to transfer title to the property will be ready for delivery.

(b). All stock, raw, wrought and in process of manufacture, &c., &c., it agrees to sell to the party of the second part for cash at the time of the transfer, on a basis of the cost thereof to the said party of the first part, as shown by its inventory of January, 1888, &c.

II. The party of the second part hereby agrees to buy the said property of the party of the first part, and to pay therefor the sums above provided at the times and in the manner above set forth. And that if he shall desire to close the said sale and acquire the said property before the first day of August, 1889, he will give the party of the first part thirty days notice of his intention so to do, with the time of closing, the place to remain as aforesaid.

III. (a.) The party of the first part agrees to furnish the party of the second part, within ten days after the execution of this agreement, with a true inventory of the several parcels of real property now owned by the party of the first part, fully describing the same, and will at all times before closing, facilitate the examination of titles by the attorneys of the party of the second part, by permitting the inspection of title deeds, and in any other manner reasonably to be required by him or them.

(b.) This provides for an inventory of the personalty to be made in the presence of a person to be named by the second party, and concludes thus: "And it is further agreed that whatever may be the amount of such stock and of such other property on hand at the time of the transfer, the party of the second part shall

not be required to pay on account thereof any greater sum than one hundred thousand dollars ($100,000)."

Item (c) provided for clearing the property of all liens, taxes, &c., and for transferring unexpired insurances.

Item (d) provided that covenants were to be incorporated in the documents of transfer that the first party or its stockholders would not again engage in the manufacture of handles, &c.

"(e.) The party of the first part agrees that it will not deviate from the usual course in the management of its business pending the completion of this contract, and that the party of the second part may at any time after the execution thereof, have free access to the books of the party of the first part, by any accountant he may select, for the purpose of ascertaining the earning capacity of the business of the party of the first part for a period of ten years last past."

Section 4 is important, and reads as follows :

"IV. The party of the second part has, at the time of the execution of this contract, deposited with the Fidelity Trust and Safety Vault Company, of Louisville, Kentucky, the sum of twenty-five thousand dollars ($25,000), and it is agreed that the same is deposited as a guaranty for the performance of this contract by the party of the second part or his assigns ; and in the event of the failure to complete this contract by him or them, the said sum is to be paid by the said Fidelity Trust and Safety Vault Company to the party of the first part, by whom it is to be received in full satisfaction of all claims against said party of the second part or his assigns for any

damages arising from such breach of contract. In the event of the due completion of this contract by both of the parties hereto, the said sum is to be paid to the party of the first part by the said Trust Company, and it is to be deducted (together with interest thereon at the rate of six per cent. per annum from the date of this contract until the date of the transfer herein provided for) from the purchase money of the property hereby agreed to be sold. Provided, however, that the party of the first part shall not be required to allow interest on said sum in the settlement for any time beyond the first day of August, 1889, and provided, also, that said party of the first part shall be entitled to any interest upon said sum so deposited that the said Trust Company may allow, and in the event of the failure of the party of the first part to carry out the provisions of this agreement the said sum shall be repaid by the said Trust Company to the party of the second part, without prejudice, however, to any claim he or his assigns may have for damages by reason of such breach on the part of said party of the first part."

The second contract made July 25, 1889, was as follows :

"The above contract (just referred to), entered into on March 16, 1889, between Turner, Day & Woolworth Manufacturing Company and C. M. Woodbury, is now modified by the parties as follows :

*First.* The time for the completion of the contract is extended to January 15, 1890, but said time may be made to mature prior to said date by the second party giving sixty days' notice, instead of thirty days' notice

as provided in this contract. In consideration of this extension, the second party has paid to said first party twenty-five thousand dollars by an order úpon the Fidelity Trust and Safety Vault Company, of Louisville, Kentucky, for the guaranty fund deposited under this contract, which twenty-five thousand dollars are to be credited upon the purchase price, if this contract be completed.

*Second.* In the event of the failure of the party of the first part to carry out the provisions of this contract, the party of the first part agrees to repay said sum of twenty-five thousand dollars to the party of the second part, without prejudice, however, to any claim he or his assigns may have for damages by reason of such breach on the part of the party of the first part, and in nowise to cover such damages.

*Third.* The said C. M. Woodbury agrees to pay, in addition to said twenty-five thousand dollars, the sum of two hundred and twenty-six thousand dollars in cash for said plant and good will. The limit of one hundred thousand dollars in subsection (*b*) of section 3 of this contract is changed to one hundred and twenty-five thousand dollars. The inventory shall be made as of January 1, 1890, if prior notice be not given, and, if prior notice be given, the prior notice shall be made as of a date fifteen days before the time thus affixed by the notice for the completion of the contract. The notice shall be given by calendar months.

*Fourth.* The increase of the consideration from two hundred and forty-six thousand dollars, as stated in section 1 (*a*) to two hundred and fifty-one thousand

dollars, as stated above, is five thousand dollars, which is allowed the party of the first part for improvements and betterments to be put on the property above described, and for keeping up the plant until January 15, 1890, and to cover any loss or damage which may happen to the first party by reason of continuing its obligation under this contract, as provided herein.

Looking to these two contracts as one whole, we inquire what were the rights of the parties upon the termination of the time within which the deal was to have been consummated? And first, what might the seller do? The appellant says it might have filed a bill to specifically enforce the contract and sell the property under its vendor's lien, crediting the twenty-five thousand dollars already received. Had the property sold for less than the contract price, it could have recovered the balance from Woodbury. Had it sold for more than the contract price, Woodbury would have been entitled to it; or it might have tendered the deeds, kept the twenty-five thousand dollars, and sued appellant for the balance of the purchase price as damages on the contract.

It seems to us, however, that when appellee had agreed, in express terms, to accept twenty-five thousand dollars as the price of the appellant's failure to perform the contract, it would be in no condition to demand additional or other damages for such failure. Whatever else may be said of these contracts, it is absolutely certain that at all events the limit of the damages to appellee by the appellant's failure to perform his agreement, was fixed at the sum of twenty-five thousand dollars. This sum was to be "received

in full satisfaction of all claims against said party of
the second part or his assigns for any damages aris-
ing from such breach of contract."

The value of the properties put under the control
of the appellant was some three hundred and fifty-
one thousand dollars, or, perhaps, three hundred and
seventy-six thousand dollars.    The average annual
sales of the product of appellee's factories amounted
to some three hundred and fifty thousand dollars.

This vast business was put into the hands of the
manager of a rival enterprise, and its extent and
detail laid open to his inspection.   Yet in no state
of case, as we understand the contract, could the
appellee recover a greater sum in damages to their
business for the risks incurred than the sum of twenty-
five thousand dollars.

If the appellee had instituted its suit for specific
performance, the answer would have been that the
contract has already been performed, because it pro-
vides that if the sale is not consummated, the sum
of twenty-five thousand dollars already paid to the
seller is to be the price of that failure.

To any suit for damages, in whatever form it might
come, the appellant's defense would have been unan-
swerable that the damages fixed by the contract had
already been paid over; or, say counsel for appellant,
the appellee might have elected to rescind the con-
tract and retain the possession of its property; in
which event it must have paid back to the appellant
the twenty-five thousand dollars, less the actual dam-
age suffered; and this election and retention, it is
contended, are the things which the appellee did do.

It follows, from what we have said, however, that there was no election left to the appellee. It had no cause of action against the appellant. The latter had paid in full for that which he had contracted to pay, and he had guarded against the payment of further damages by unmistakable language. Under these circumstances the appellee did all it could do. In other words, it did nothing. It had no lien for purchase money on any property. It had, in fact, sold no property to the appellant. No title to any passed from it to the appellant, and when the appellant failed to buy as he had agreed to do, no remedy was left the appellee save to be contented with the provisions of the contract.

In contemplation of the parties, when looking to the completion of the contract, this fund was regarded as a partial payment of the purchase price, but when looking to the appellant's breach of the contract, it was regarded as the compensation due to the appellee for the rights it parted with, in and to the control of its business. If this compensation were the subject of ready admeasurement by the court, or, if the sum agreed on was excessive, there might be some excuse for equitable interference. But it is possible for no one to estimate with any degree of certainty what damage the appellee sustained or might have sustained by reason of the exercise of the rights given the appellant under the contract and his failure to consummate the agreement.

The learned chancellor aptly put the case thus:

"The twenty-five thousand dollars was not paid to the defendant for the mere consideration for the exten-

sion of the contract, nor was it a mere partial payment. The parties provided for its disposition in every contingency, and in only one was the money to be returned to plaintiff, and that was the failure to complete the contract caused by the default of the defendant. No such contingency happened. It can not be said that the sum paid is so excessive in amount, as liquidated damages, when the nature of the transaction is considered in all its parts, and the impossibility of estimating the damages to defendant by reason of the default of plaintiff by any known rule of law is fully considered, as to require the court to disregard the terms of the contract in order to relieve plaintiff from a hardship. The deposit or payment of the money and its appropriation as the parties directed can not be regarded upon the facts of this case as the enforcement of a penalty or forfeiture.''

Appellant's counsel cite a number of cases supposed to be in support of their contention. In many of them there was an absolute sale, and the vendor without the consent of the vendee retook possession. It was held that the vendor elected to rescind the contract, and he was not allowed to hold his land and also that part of the purchase money which had been paid by the vendee. The vendor having elected to rescind the contract, the parties were placed in *statu quo.* The cases of Gilbreth v. Grewell, 13 Ind., 485, and Dantzeiser v. Cook, 40 Ind., 66, are of this character. Other cases are cited where the actual damages were readily ascertainable, but who can estimate them in a case like this one?

As put by counsel: "How much is it worth to surrender the owner's right to dispose of a large manufacturing establishment and its good will for ten months? or open its books and business secrets to the inspection of a smart and energetic rival? or have the public know that its property is on the market and its business of uncertain continuance? Where is the rule of law which determines the criterion of admeasurement?"

Abundant authority exists in support of this construction. Mr. Sedgwick, in his work on Damages, section 416 (8th ed.), uses these words: "When, independently of the stipulation, the damages would be wholly uncertain and incapable or very difficult of being ascertained, except by mere conjecture, then the damages will be usually considered liquidated.'

Mr. Wharton, in his Law of Contracts, volume 2, section 743, says: "Whether a deposit paid on a contract for the purchase of real estate can be recovered back on the purchase falling through depends upon the terms of the contract. Where the purchaser refuses to comply with the terms assented to by him, he can not recover back the deposit as such, unless the agreement gives him that right, though he might have an action against the vendor for damages if the vendor be the party primarily responsible for the failure of the negotiations. The return of the deposit also may be excluded by the terms of the contract. But, ordinarily, when the sale is not perfected through the vendor's fault, or the contract is rescinded by the parties, the deposit may be recovered back as money had and received."

In Gobble v. Linder (1875), 76 Ill., 157, there was a contract to exchange farms, and, in case either party failed to make the deed at the appointed time, he would forfeit to the other the sum of fifteen hundred dollars. The court said: "When the parties to an agreement have expressly declared the sum to be intended as a forfeiture or penalty, and no other intent is to be collected from the instrument, it will generally be so treated, and the recovery will be limited to the damages sustained. * * On the other hand, it will be inferred the parties intended the sum named as liquidated damages when the damages arising from the breach are *uncertain*, and are not capable of being *ascertained* by any satisfactory and known rule, or when, from the nature of the case and the tenor of the agreement, it is apparent the damages have already been the subject of actual and fair calculation and adjustment. Of the latter sort, Greenleaf says, 'are agreements to convey land, or, instead thereof, to pay a certain sum.'" (2 Greenleaf on Evidence, secs. 258, 259.)

See also Stillwell v. Temple, 28 Mo., 156; Mathews v. Sharp, 99 Pa. St., 560; Eakin v. Scott, 70 Texas, 442.

In Hansbrough v. Peck, 5 Wallace, 497, Justice Nelson said: "No rule in respect to the contract is better settled than this: that the party who has advanced money or done an act in part performance of the agreement, and then stops short and refuses to proceed to its ultimate conclusion, the other party being ready and willing to proceed and fulfill all his stipulations according to the contract, will not be permitted to recover back what has thus been advanced or done."

In Haynes v. Hart, 42 Barb., 58, the learned judge said: "I think no case can be found where a purchaser has been allowed to recover back partial payments after a default in making further payments *when the vendor has merely* kept the property agreed to be sold, or sold it to another in consequence of such default. * * There is no promise for paying back, and there can be no recovery without, in such a case."

In the case at hand there is no room for misunderstanding, if the simple language of the contract is to control. It was entirely reasonable and natural that, before placing its business in the hands of the purchaser or stipulating for its sale, the appellee should have demanded a cash payment or deposit, taking care, as it was placed in the form of a deposit, to control its ultimate destination in case of appellant's failure to complete the contract, by the stipulation that the deposit should be paid to it. When, under the terms of the contract, the failure was demonstrated and the deposit was in fact due to the vendor because the purchase money was not ready on August 1, 1889, the seller demanded the unconditional and absolute payment of the fund to it, and this was done. It is true, the option was continued, but not on any terms in anywise inconsistent with the original contract. The deposit was turned over to the parties entitled to it, not in pursuance of some new contract, but in plain fulfillment of the old one.

We know of no rule of law giving to the party in default a right of action for its recovery.

The judgment dismissing the petition is affirmed.