## MILES v. PROFFITT et al.

Court of Appeals of Kentucky.

March 26, 1954.

### MID–VALLEY PIPELINE CO., Appellant,

v.

Chas. Wm. ANDERSON, By, etc., Appellees.

Court of Appeals of Kentucky.

Feb. 19, 1954.

W. Lee Blackwell, Blakey Helm, Louisville, for appellant.

Brents Dickinson, Jr., Glasgow, for appellees.

STEWART, Justice.

Appellees, H. H. Proffitt, William G. Proffitt and Roger Proffitt, instituted this action in the Barren Circuit Court on February 4, 1950, against appellant, J. B. Miles, to rescind a contract involving a sale by appellees to appellant of the "Lone Oak Motor Court," located on U. S. Highway 31 W near Cave City. On February 9, 1950, appellees, having given notice to appellant, applied for the appointment of a receiver and appellant, having filed no response and having failed to appear, a receiver was appointed who operated the motor court until April 22, 1950.

On April 17, 1950, appellant filed his answer and counterclaim, seeking to have the contract rescinded on the ground that false representations were made by appellees which induced him to purchase the property. He asked that he recover the following sums, plus interest: $11,031.15, the total amount paid on three promissory notes executed to appellees as part of the purchase price; $4,700, the cost of improvements alleged to have been added by him to the property; and $3,800, the amount of a promissory note executed by appellant to a former purchaser of the motor court, Mrs. Virginia Wibbels, as a part of the purchase price. Appellees' reply was in ef-

fect a general denial of fraud and of appellant's right to recover any of the items sued for.

At the January term, 1951, the cause was transferred to the common law docket for a trial by jury on the issue of fraud. At the close of appellant's evidence, the court directed a verdict in appellees' favor. Appellant has raised a question as to the correctness of this ruling of the court.

On May 17, 1951, appellant filed a supplemental answer and counterclaim, seeking the relief already mentioned and, in addition, the sum of $1,054.30, the value he claimed for certain equipment which he alleged appellees had appropriated to their use, and $360.45, the loss by depreciation he asserted had resulted to other personal property belonging to him which appellees had kept and used for a time. He also pleaded he was entitled to recover a payment of $2,232.18 made by him on the $3,800 Wibbels' note.

The case was heard by the chancellor, who rendered judgment dismissing appellant's claim of fraud and adjudging that appellees were entitled to retain as rent and liquidated damages the sum of $11,031.15 paid by appellant on the purchase price. Appellant's other claims also were denied, except that he was allowed to recover $1,054.30 as the value of the equipment taken over by appellees.

Appellant seeks a reversal of this judgment, contending first that the trial court erred in directing a verdict for appellees on the issue of fraud. In this connection, we shall also consider his complaint with reference to the trial court's refusal to require the production of certain federal income tax reports filed by appellees for the years 1947 and 1948.

The facts by which appellant attempts to establish his claim of fraud are that in October of 1947, the Lone Oak Motor Court, consisting of twenty acres of land, twenty-seven cabins, a restaurant, a gift shop, a six-room residence, two barns, a gasoline station and other small buildings, was listed by appellees for sale through the D. Y. Grundy Company of Louisville. Appellant, an employee of this company, was designated to sell this particular property, but no sale was effected during the period it was then up for sale.

In July, 1948, the property was again listed with the same company and in October, 1948, a Mrs. Virginia Wibbels agreed to lease the motor court for three months with an option to buy the property for $90,000 within that period of time. Appellant participated fully in the negotiation of this deal. On February 16, 1949, Mrs. Wibbels and appellees cancelled their contract by mutual consent and appellant agreed by written contract to purchase the property on the same day for $85,000. We deem it unnecessary to enumerate all of the minute details of the contract. Suffice it to say, appellant started operating the property on February 16, 1949, and continued to so operate it for fifty-one weeks, receiving a gross return of $22,000. During this time he made the three payments mentioned above, as called for by the terms of the contract, but he refused to meet the installment due in January, 1950, because he contends he was not making as much as appellees represented to him the motor court would earn.

Appellant maintains that he bought this property after being assured by appellees that it would yield a net income of $30,721.56 annually but it seems absolutely clear from his testimony that no such statement was ever made to him by any of the appellees. By his own admission, he was at the most given only a schedule of the amounts charged per day as rent for each unit of the motor court and he undoubtedly knew this to be only an estimate of what the property could produce. He had full knowledge of the fact that the previous purchaser, Mrs. Wibbels, had operated the motor court for two months and had grossed only $2,400, a sum which would indicate the property would produce a net annual income far below the amount he claims he relied upon when he purchased the motor court. Moreover, the fact is uncontradicted that appellant, after operating the motor court for four months, con-

firmed the transaction by entering into a supplemental contract ratifying the original one. He made a payment as late as October 21, 1949, some eight months after entering into the agreement, and at that time displayed no dissatisfaction with the deal and only four days before this suit was filed, he wrote to appellees, telling them he felt they had dealt fairly with him.

■ We have only to glance at the principles governing the proof required to establish actionable fraud to determine that the trial court correctly directed a verdict in appellees' favor on this issue and properly adjudged that rescission would not lie in appellant's favor because of any alleged misrepresentation on the part of appellees. In McGuffin v. Smith, 215 Ky. 606, 286 S.W. 884, 886, it was said:

"The general rule is that to constitute actionable 'fraud' it must appear: (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth, and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury."

■ That appellant must bear the burden of proving fraud is a principle too well recognized to require supporting authority. An examination of appellant's evidence can lead to no other conclusion than that he failed to meet this burden. Although all of the foregoing elements must be present to constitute fraud, we can scarcely say that any one of them exists in the case at bar. Primarily, it was not shown that appellees made at any time a false representation which induced appellant to buy the motor court. Then, too, his confidential relations with appellees and his intimate knowledge of Mrs. Wibbels' experience with the property undoubtedly afforded him complete information as to the earning capacity of the motor court prior to his acquisition of it. He ventured in this instance with his eyes wide open and he must accept the consequences of his act.

We need not determine whether the trial court should have required appellees to produce their income tax reports for 1947 and 1948. Since we take the view that appellant failed to prove any misrepresentations were in fact ever made, it follows that a refusal to admit this evidence could not have been prejudicial under the circumstances.

The chancellor adjudged that appellees were entitled to rescind their contract, this upon the theory that appellant had breached the agreement by declining to meet the installment due in January, 1950. He also found appellees had not failed to perform their part of the written contract. The following clauses of the contract between the parties is pertinent:

"It is understood and agreed that should the party of the second part fail to pay any of his above mentioned obligations promptly when the same shall become due, that then and in that event the parties of the first part may declare the entire unpaid balance, both principal and interest, to be at once due and payable, and may at their option terminate this contract, and it is further agreed that in such event any amount which shall have been paid by the party of the second part shall be considered as rent and liquidated damages, and shall be retained by the parties of the first part. * * *

"The party of the second part covenants and agrees * * * that should he fail to fully comply with any and all of the covenants and agreements herein contained by him to be kept and performed that he will thereupon promptly surrender possession of said property to the parties of the first part upon demand being made by them."

Appellees contend the contract itself provides in unambiguous language that the amounts already paid on the purchase price of the property by appellant should, because of his failure to perform under it, be re-

tained by them "as rent and liquidated damages." The chancellor upheld this view and we believe the facts support his conclusion.

Kravitz v. Grimm, 273 Ky. 18, 115 S.W. 2d 368, 371, was a case analogous to the one at bar. There Kravitz entered into a written contract to purchase from Grimm an improved lot at an agreed consideration to be paid in a stipulated number of equal installments. In the event Kravitz failed to pay the monthly installments within ten days after the due date, the contract was to become null and void, and Grimm was given the right without demand or notice to re-enter and repossess the premises. All money paid up to that time was to be considered as rent for the use and occupation of the property and as damages for the breach of contract. He paid on the property for over five years and then defaulted. The question was whether Kravitz could recover the aggregate amount paid to Grimm.

 We held in that opinion a party to such an agreement to purchase property, who had advanced money in part performance of the contract and then had refused to proceed to the ultimate conclusion of the agreement, the other party being ready, willing and able to perform his part of the contract, is not entitled to recover any of the money so advanced. We pointed out: "The reason for the rule is that a party to a contract cannot breach it and, being in default, thereby secure for himself some right or advantage to the detriment of the other party, who is not in any default. * * *" The foregoing proposition is sustained in a long line of cases annotated in 134 A.L.R. 1067; in 102 A.L.R. 854; and in 59 A.L.R. 194. See also Johnston v. Benjamin, 219 Ky. 169, 292 S.W. 801. We believe the Kravitz case controls here.

 However, appellant contends a provision in a contract that a certain amount shall be liquidated damages is unenforceable in this state unless the actual damages are uncertain or difficult of ascertainment and he asserts the damages in this instance may be reduced to a definite sum. We do not agree that the loss may be made definite in this instance. There is perhaps no question more difficult to determine than the amount of damages which may arise from the loss of profits of a "going concern," such as a motor court in operation during the period of time a buyer may have held it under a contract such as that in controversy here. We are dealing with very valuable, highly-developed property, tied up with complex and variable economic forces. So many factors enter into the conduct of such a business that any loss occasioned to the seller in event of a breach of this type of contract would be undoubtedly uncertain and conjectural. Therefore, for the reasons indicated, the plan adopted by the contracting parties as to fixing damages seems to us a reasonable one and appears to fall clearly within the general rule that parties will be allowed to agree upon a definite sum to represent liquidated damages which may result from a failure to comply with the terms of the contract. Woodbury v. Turner, Day & Woolworth Mfg. Co., 96 Ky. 459, 29 S.W. 295, 16 Ky. Law Rep. 566; Kilbourne v. Burt & Brabb Lumber Co., 111 Ky. 693, 64 S.W. 637, 23 Ky.Law Rep. 985, 55 L.R.A. 275.

 The chancellor properly denied recovery by appellant of the sum of $4,700, claimed to have been spent by him in improving the motor court and the further amount of $360.45, asserted to have been depreciation occasioned by appellees' retention for a time of certain personal property belonging to appellant. The burden of proving these figures rested upon appellant. We have carefully read his testimony pertaining to these items and find that in no instance are they established by him with any semblance of certainty. Moreover, appellees adduced proof that strongly tended to rebut the validity of these claims.

Wherefore, the judgment is affirmed.