Ewell GLOVER and Bessie Glover, Plaintiffs,

v.

DOE VALLEY DEVELOPMENT CORPORATION, Defendant.

Civ. A. No. C 74–402 L(A).

United States District Court, W. D. Kentucky, Louisville Division.

Nov. 20, 1975.

Lloyd C. Anderson, Louisville, Ky., for plaintiffs.

Robert L. Sloss, Wyatt, Grafton & Sloss, Louisville, Ky., for defendant.

## MEMORANDUM OPINION

ALLEN, District Judge.

This action is submitted to the Court for decision upon the cross-motions of the parties for summary judgment as to all issues raised in Counts I, II and III of plaintiffs' complaint.

### COUNT I

In Count I, plaintiffs allege six violations of the disclosure requirements of the Truth-in-Lending Act (hereinafter the Act), 15 U.S.C. § 1601 et seq., and of Regulation Z. 12 C.F.R. Part 226, issued pursuant thereto.

██ First, plaintiffs argue that the manner of disclosing the following provision of the Acquisition Agreement, entered into between plaintiffs and defendant for the purchase and sale, respectively, of an unimproved lot, violates Regulation Z as it relates to credit sales which are not open ended:

> "In case of failure of the Purchaser to make any payments provided for herein, or perform any of the covenants on his part made and herein entered into, the Seller, in addition to the rights granted to Seller on the other side of this Agreement resulting from a default of the Purchaser, may declare this Agreement to be forfeited and terminated and the Purchaser shall forfeit all payments made by him pursuant to this Agreement, and said payments shall be retained by Seller to full satisfaction of all damages by it sustained to the date of default . . . ."

The defendant does not deny that if the above forfeiture and liquidated damage clause is required to be disclosed by the Act, that the manner of its disclosure, on the back side of the Acquisition Agreement and Promissory Note, and not above or adjacent to the plaintiffs' signatures, violates Regulation Z, 12 C.F.R. § 226.8(a).

However, the defendant argues that the clause does not fall within the class of "default, delinquency, or similar charges payable in the event of late payments," the amount or method for computing the amount of which must be disclosed in connection with consumer credit sales not under open end credit plans, according to the Act, 15 U.S.C. § 1638(a)(9), and Regulation Z, 12 C.F.R. § 226.8(b)(4), because (1) the forfeiture and liquidated damage provision is not a *charge* within the meaning of the Act, since it does not constitute a sum of money payable in addition to other finance charges, and (2) the forfeiture and liquidated damage provision is not *payable* under Kentucky law since Kentucky courts do not uphold such clauses but allow purchasers, like mortgagors, to demand judicial sale of the property purchased.

We are not persuaded by defendant's arguments and find that a forfeiture and liquidated damage clause, such as was incorporated in the contract in question, is a default or similar charge payable in the event of late payments.

Neither the Act nor Regulation Z defines the term "charge," but the courts have interpreted this term, in a line of cases dealing with acceleration clauses, in one of two ways. Those courts which have held that an acceleration clause is a "default, delinquency, or similar charge payable in the event of late payments" have taken a broad view of the term "charge," interpreting it to mean any "pecuniary burden or expense," *Garza v. Chicago Health Clubs, Inc.,* 347 F.Supp. 955, 959 (N.D.Ill.1972); *Meyers v. Clearview Dodge Sales, Inc.,* 384 F.Supp. 722, 727 (E.D.La.1974), or "obligation or claim," *Garza, supra* ; *Johnson v. McCrackin Sturman Ford, Inc.,* 381 F.Supp. 153, 155 (W.D.Pa.1974). Those courts which have held that an acceleration clause is not such a "charge" have taken a narrow view of the term, interpreting it to mean an "additional cos[t] above an existing obligation," *Morris v. First National Bank,* 4 CCH Consumer Credit Guide ¶ 98,568, p. 2 (N.D.Ga.1975), or a "monetary amount added to the amount due," *McDaniel v. Fulton National Bank,* 4 CCH Consumer Credit Guide ¶ 98,683, p. 6 (N.D.Ga.1974).

Although a forfeiture and liquidated damage clause does not create a cost payable in addition to the purchase amount already due by contract, since the existing obligation is cancelled by the creditor's exercise of this option, it may operate to create a cost payable in addition to the amount of damages otherwise due by law upon purchaser's default, since, presumably, the creditor would exercise this option where the forfeiture and liquidated damages would exceed his actual damages.

Further, forfeiture and liquidated damage clauses have been regularly enforced by Kentucky courts, in cases involving land sale contracts, upon the purchaser's default. See, *Robert F. Sim-* *mons & Associates v. Urban Renewal & Community Development Agency,* 497 S.W.2d 705 (Ky.1973); *Graves v. Winer,* 351 S.W.2d 193 (Ky.1961); *Miles v. Proffitt,* 266 S.W.2d 333 (Ky.1954); *Kravitz v. Grimm,* 273 Ky. 18, 115 S.W.2d 368 (1938). In the two cases, *Mercer v. Federal Land Bank,* 300 Ky. 311, 188 S.W.2d 489 (1945) and *Youngblood v. Gholson,* 255 S.W.2d 603 (Ky.1953), cited by the defendant for the proposition that forfeiture and liquidated damages will not be awarded for any amount in excess of the reasonable rental of the property, the vendor, and not the purchaser, was in breach of the contract of sale.

Although there are strong equitable reasons for treating an installment land sale contract, where the vendor retains title until the purchaser has paid the principle with interest in full, like an equitable mortgage, to allow a purchaser, like a mortgagor, a right of redemption and the right to enforce a judicial sale of the property to satisfy his debt, and although in some jurisdictions courts will exercise their equity powers to order such a sale, see Annotation, 51 A.L.R.2d 672 (Supp.1975), this is not clearly the practice in Kentucky, as alleged by the defendant.

In a case involving a contract for sale of personal property, to the effect that no title was to pass to the purchaser until after payment in full of the purchase money and that, in the event of default by the purchaser, seller could retain all amounts paid as "rent and use of and damage to" the chattel, a Kentucky court did hold that the contract for sale would be treated as creating a chattel mortgage so that, upon resale of the personalty, the original purchaser was entitled to the excess of the resale price over the amount of his obligation still owing, *Montenegro-Riehm Music Company v. Beuris,* 160 Ky. 557, 169 S.W. 986 (1914).

In a later Kentucky case, however, involving a contract for sale of real property, to the effect that title was to remain with the vendor until the purchaser had made all the required installments with interest and that, in the event of

default by the purchaser, the money he had paid at that time would be considered as rent for the use of the property and liquidated damages, the Court dismissed the purchaser's suit in equity for the return of money paid and for an order that the property be sold to satisfy his debt, holding that the forfeiture and liquidated damage clause was enforceable where a purchaser was in default, *Kravitz v. Grimm, supra*; followed in *Miles v. Proffitt, supra.*

Therefore, we hold that because a forfeiture and liquidated damage clause is a default or similar charge payable within the meaning of the Act and Regulation Z, defendant violated the intent of the Act and Regulation Z, 12 C.F.R. § 226.-8(a), through its failure to properly disclose the method of computing the potential charge by placing the clause on the same side of the sheet with the other default provisions and required disclosures and above or adjacent to plaintiffs' signatures.

■ We find no merit to plaintiffs' second allegation, that the defendant violated Regulation Z, 12 C.F.R. § 226.-8(b)(1), requiring disclosure of the date on which the finance charge begins to accrue *if different from* the date of the transaction, inasmuch as defendant, by an amended answer to plaintiffs' interrogatories, has stated that the date on which the finance charge began to run in this case was June 25, 1974, the date of the transaction, and the promissory note signed by plaintiffs clearly states that interest would run from the date thereof, which was June 25, 1974. Since all the evidence of record supports the fact that the finance charge did not begin to accrue on a date different from the date of the transaction, plaintiffs' mere allegation that this "cannot possibly be correct" is not sufficient to create an issue of fact for trial. See Rule 56(e), Federal Rules of Civil Procedure.

■ Further we find no merit to plaintiffs' third allegation, that the defendant violated the intent of the Act and Regulation Z, 12 C.F.R. §§ 226.6(a) and 226.8(b)(3), in disclosing the total of payments due. Although Regulation Z, in 12 C.F.R. § 226.6(a), states that disclosures shall be made "in the terminology prescribed in applicable sections," and, in 12 C.F.R. § 226.8(b)(3), that in a credit sale transaction the sum of the payments scheduled to repay the indebtedness shall be disclosed using the term "total of payments," we find that the defendant did not violate the above provisions of Regulation Z by using the term "total payment of" to disclose the sum of the payments scheduled to repay the indebtedness.

By so finding we do not deny that Regulation Z, 12 C.F.R. § 226.6(a), sets out a "uniform terminology rule," nor do we refute the power of the Board of Governors of the Federal Reserve System to interpret the Act to require the use of uniform terminology by creditors in consumer credit transactions or the wisdom of the District Court's holding in *Kristiansen v. John Mullins & Sons, Inc.,* 59 F.R.D. 99 (E.D.N.Y.1973), to the effect that strict compliance with the terminology required by Regulation Z is necessary to facilitate comparison shopping for credit by consumers, a major purpose of the Act.

■ We merely hold that in cases where the difference between the terminology used by the creditor and the terminology required by Regulation Z is so *de minimus* as to negate any possibility that the consumer debtor would be confused thereby or his or her ability to comparison shop for credit would be inhibited thereby, it would serve no purpose of the Act and is, therefore, not the proper interpretation of the uniform terminology rule of Regulation Z to find such *de minimus* discrepancies to be violative of the Act and Regulation.

We cannot conceive, nor have plaintiffs even alleged, that by using the terminology "total payment of", the defendant has confused plaintiffs as to the meaning of the term or has made it more difficult for plaintiffs to compare the term with like terms in other credit sales contracts, wherein the terminology required by Regulation Z, "total of payments," is used.

■ We do find, however, as to plaintiffs' fourth allegation, that the manner in which defendant disclosed the amount of the downpayment violates the intent of the Act and Regulation Z, 12 C.F.R. §§ 226.6(a) and 226.8(c)(2).

The Acquisition Agreement entered into between plaintiffs and defendant states, in pertinent part, as follows:

"7. FEDERAL TRUTH IN LENDING DISCLOSURES (an integral part of this Agreement)

. . . (b) Cash Down Payments Received

| | |
|---|---|
| $600.00 | |
| $200.00 | Due Today |
| $400.00 | Due 7/25/74" |

Regulation Z, 12 C.F.R. § 226.8(c)(2), requires that in the case of a credit sale not under an open end credit plan, the following be disclosed: "the amount of the downpayment itemized, as applicable, as downpayment in money, using the term 'cash downpayment,' downpayment in property, using the term 'trade-in' and the sum, using the term 'total downpayment.'"

■ We interpret the above provision, 12 C.F.R. § 226.8(c)(2), to mean that the amount of the downpayment must be itemized and the term "total downpayment" used where there is to be more than one payment made as part of the total downpayment, whether those payments are all to be in money or in property or are to be a combination of the two.

The defendant's argument, that 12 C.F.R. § 226.8(c)(2) should be interpreted as requiring itemization of the amount of the downpayment, and the subsequent use of the term "total downpayment," only where payments are to be made both in property and money, is rejected for the same reasons that the Seventh Circuit rejected that argument in *Gilbert v. Wood Acceptance Company*, 486 F.2d 627 (7th Cir. 1973). First, as was pointed out in that case, *supra* at 631, since the Act, in 15 U.S.C. § 1638(a)(2), requires that, in the case of a credit sale not under an open end credit plan, "the

sum of *any amounts* credited as downpayment (*including* any trade-in)" (emphasis added) be disclosed, and Regulation Z, in 12 C.F.R. § 226.8(c)(2), implements this Section of the Act, "as applicable" in 12 C.F.R. § 226.8(c)(2) should not be interpreted as restricting the need for itemization to only those cases where both money and property are accepted as part of the downpayment. This interpretation is strengthened, as the Court in *Gilbert, supra* at 630, also points out, by the Board's Interpretation in 12 C.F.R. § 226.504, relating to disclosure of so-called "pick-up payments" in installment contracts.

In the case at bar, not only did the defendant fail to use the precise terminology required by Regulation Z, "total downpayment," but such failure, and the way in which the downpayment was otherwise disclosed, leads to confusion as to what the total amount of the downpayment was. By stating that the cash downpayment *received* was $600 with $200 *due* today and $400 *due* July 25, 1974, it is far from clear whether the total downpayment was $1,200 or $600. The fact that the confusion over the amount of the total downpayment could have been resolved by subtracting the unpaid balance from the cash price and that, presumably, plaintiffs knew how much they had, in fact, paid down and were required to pay as downpayment, in no way absolves the defendant of its obligation to comply with the disclosure requirements of the Act and Regulation Z.

Therefore, we hold that the defendant violated the intent of the Act and Regulation Z, 12 C.F.R. § 226.6(c)(2), by failing to provide meaningful disclosure of the amount of the downpayment and Regulation Z, 12 C.F.R. §§ 226.8(a) and 226.8(c)(2), by failing to use the terminology "total downpayment."

■ Plaintiffs' other contention, in this regard, that the defendant's failure to state whether the pick-up payment could be refinanced violates the intent of the Act and 12 C.F.R. § 226.504, has no merit.

The Board's Interpretation, in 12 C.F.R. § 226.504, provides in pertinent part, as follows:

"(a) In some instances involving an installment contract arising from a credit sale, the purchaser may not pay the full amount of the required downpayment at the time he signs the contract or otherwise enters into the credit transaction. In such cases, the creditor may include in the installment contract or accept a separate obligation for the unpaid portion of the downpayment, commonly called a 'pick-up payment,' the amount of which usually carries no finance charge and it is to be paid on or before a specified date independent of the other scheduled payments. . . . (d) In making the disclosures required under § 226.-8(b)(3), if such 'pick-up payment' is more than twice the amount of an otherwise regularly scheduled equal payment, the creditor shall state the conditions, *if any*, under which such 'pick-up payment' may be refinanced if not paid when due; and such 'pick-up payment' may be identified using that term or the term 'balloon payment.'" (emphasis added)

Although the pick-up payment of $400 is more than twice the amount of an otherwise regularly scheduled equal payment in this case, plaintiffs do not allege, and defendant denies, that there were any conditions under which such pick-up payment was to be refinanced, and the logical interpretation of "if any," in this context, is as restricting the requirement of disclosure to those situations where such conditions for refinancing exist.

Whether the failure to pay the pick-up payment when due is covered by the acceleration clause of the Acquisition Agreement, as contended by the defendant, or by the forfeiture and liquidated damages clause of the Agreement, which appears to the Court to be the correct interpretation of the contract, or whether such a failure is an omitted term, as contended by the plaintiffs, is a problem of contract interpretation; but it is not a matter governed by the Truth-In-Lending Act, since the Act is concerned only with the meaningful disclosure of those contract terms which have been agreed upon by the parties and which relate to the cost of credit, and not with the prevention of omitted contract terms.

Finally, plaintiffs allege, as fifth and sixth violations of the Act and Regulation Z, defendant's failure to include the $150 fee for membership in Doe Valley Association, Inc., required of plaintiffs, in the finance charge and subsequently in the annual percentage rate.

It is clear from a reading of the Acquisition Agreement that it was a standard form used for both cash and credit sales and that the membership fee required by the Agreement, therefore, applies to both cash and credit purchasers. Thus, we hold that the membership fee was not a finance charge as defined by the Act, 15 U.S.C. § 1605(a), since it was not a charge imposed by the creditor as an incident to the *extension of credit*, but rather was a charge imposed by the seller as an incident to the *sale of property*, regardless of whether the sale was on credit.

This is consistent with the Board's Interpretation in 12 C.F.R. § 226.407, where a fee for membership in a credit plan and for a credit card was not considered part of the finance charge, since it was not incident to or a condition of any specific extension of credit. Therefore, defendant's disclosures of the finance charge and of the annual percentage rate were not violative of the Act or Regulation Z.

In conclusion, we hold, as to Count I, that plaintiffs are entitled to summary judgment because of the failure of defendant to properly locate the forfeiture and liquidated damages clause and to properly disclose the amount of the downpayment by using the terminology "total downpayment." Since twice the finance charge in this transaction exceeds the statutory maximum, we find the defendant liable to the plaintiffs in the amount of $1,000. See 15 U.S.C.

§ 1640(a). We find no reason to overturn our previous decision in *Kasey v. Albin Used Cars*, Civil Action No. 7493–A filed October 9, 1974, that the statutory maximum of $1,000 applies regardless of the number of plaintiffs.

Further, plaintiffs' counsel is entitled to a fee, and if the parties cannot agree thereto within seven days of the entry of this opinion, plaintiffs shall then submit a memorandum and affidavits in support of its motion for fees. Defendant may respond within ten days after receipt of the memorandum.

## COUNTS II and III

■ In Counts II and III, plaintiffs allege a single violation of the Act, 15 U.S.C. § 1635(a), and Regulation Z, 12 C.F.R. § 226.9—the defendant's failure to give plaintiffs notice of their right to rescind the transaction—and seek to rescind the transaction and recover all monies paid thereunder.

Under the Act, an obligor has the right to rescind a transaction within three days from the consummation thereof if the transaction involves the acquisition of real property which is used or is expected to be used as *the residence* of the obligor. See 15 U.S.C. § 1635(a). This section of the Act has been interpreted by Regulation Z as giving the obligor the right to rescind a transaction within three days from the consumma-

tion thereof if the transaction involves the acquisition of real property which is used or is expected to be used as *the principal residence* of the obligor. See 12 C.F.R. § 226.9(a).

It is not contested that the defendant gave no notice to plaintiffs of a right to rescind and that, if such notice were required, plaintiffs could now rescind the transaction and recover their $200 partial downpayment. See 15 U.S.C. § 1635(b) and 12 C.F.R. § 226.9(d). Further, plaintiffs do not argue that Regulation Z's prerequisite of use or expected use as the principal residence to a right to rescind incorrectly interprets the Act's prerequisite of use or expected use as the residence.

The only issue before this Court is whether the defendant knew or should have known that plaintiffs expected to use the unimproved lot, the subject of the credit sale, for their principal residence. The defendant, in this regard, did have a duty to make reasonable efforts to obtain such knowledge. See 15 U.S.C. § 1640(c) and 12 C.F.R. § 226.6(f).

The record discloses that defendant knew that the property in question would be used for residential purposes, due to the reciprocal restrictive covenants of its deeds, but that the Acquisition Agreement contained the following provision—"Purchaser certifies that this property will be used as:

———————————————————————— "—

| (VACATION HOME) | (PRINCIPAL RESIDENCE) | (RECREATION) | (OTHER) |

————————

to which plaintiffs responded by writing "Recreation & Inv[estment]" over the space designated by "(RECREATION) (OTHER)."

Plaintiffs have merely alleged that defendant knew or should have known that plaintiffs expected to use the unimproved lot for their principal residence, but have produced no factual evidence to support this contention, other than defendant's knowledge that the property would be put to a *residential use.*

Therefore, since we find that by placing the above provision in the Acquisition Agreement the defendant satisfied its duty of inquiry to determine whether it was obligated to give plaintiffs notice of a right to rescind and that the plaintiffs' reply was not so equivocal, in light of the fact that there was a blank for "Principal Residence," as to put defendant on notice that it should inquire further, we hold that the defendant is entitled to summary judgment on Counts II and III because of plaintiffs' failure to

show by specific facts that there is a genuine issue for trial. See Rule 56(e), Federal Rules of Civil Procedure.

Summary judgment has been entered in accordance with this opinion.