Charles MOORE, Appellant,

v.

**FORD MOTOR CREDIT
COMPANY, Appellee.**

No. 88–CA–2515–S.

Court of Appeals of Kentucky.

Oct. 20, 1989.

Darrell L. Saunders, Hoskins and Saunders, Corbin, for appellant.

Elizabeth Lee Thompson, Mapother and Mapother, Lexington, for appellee.

Before EMBERTON, HOWARD and McDONALD, JJ.

McDONALD, Judge.

The appellant, Charles Moore, has appealed from the summary judgment of the Laurel Circuit Court in this action for damages due to his default on an automobile lease. Moore leased the vehicle, a 1984 Ford Escort automobile, from Paducah Ford, Inc., by execution of a form entitled "Net (Closed End) Lease, Purchase Option" on March 9, 1984. The lease contemplated, with disclosure, immediate assignment to the appellee, Ford Motor Credit Company (Ford Credit), and it was so assigned. The lease provided for a total of 48 monthly payments of $158.44 ($7,605.12 over the entire lease period) and contained an option allowing Moore to purchase the vehicle at the end of the lease for $3,200. In the assignment to Ford Credit, Paducah Ford agreed that the "lease-end residual value" of the vehicle was $2,996.59.

Moore kept the Ford and made the lease payments thereon until September, 1985. At that time the lease was transferred, with the appellee's consent, to Billy Mitchell. Moore, by the terms of the transfer agreement, remained responsible for the payments under the lease in the event of Mitchell's default.[1]

---

1. This transfer was made when Moore obtained     another vehicle from Paducah Ford. The

In the spring of 1987 Mitchell did default in payment of the lease. The appellee repossessed the vehicle and, in April, 1987, caused it to be sold at an auto auction. It brought the sum of $1,250. Ford Credit then commenced this action for the alleged resulting deficiency, costs and attorney's fees. The Laurel Circuit Court entered summary judgment in favor of Ford Credit and awarded the appellee damages of $3,482.55 plus $520 for its attorney. Mr. Moore has appealed from this judgment.

Our standard of review of cases disposed of by summary judgment is well established. CR 56.03; *Gill v. Warren*, Ky. App., 751 S.W.2d 33 (1988); *Paintsville Hospital Co. v. Rose*, Ky., 683 S.W.2d 255 (1985). In order for us to affirm, not only must the record be devoid of any question of material fact but the appellee must be entitled to judgment as a matter of law.

The appellant argues that summary judgment was improvidently granted because there was a material issue of fact as to whether he was given notice of the sale of the vehicle as well as a question of fact concerning whether the sale was conducted in a commercially reasonable manner. Certainly, if either of these issues were relevant to Ford Credit's entitlement to judgment, the case would have to be reversed. *See McCoy v. American Fidelity Bank & Trust Co.*, Ky., 715 S.W.2d 228 (1986).

■ As Ford Credit points out, however, the Uniform Commercial Code provisions relied upon by Moore concerning the disposition of secured property are not applicable to transactions involving a lease. *Diaz v. Goodwin Brothers Leasing, Inc.*, Ky., 511 S.W.2d 680 (1974).[2] Thus, as there is no question that the lease was breached and that Moore remained responsible for the default, part of the judgment establishing Moore's liability under the lease is affirmed.

■ We are convinced, though, that Ford Credit is not entitled, as a matter of law, to the damages it was awarded by the trial court. Those damages awarded were based on the following statement submitted by the appellee:

| | |
|---|---|
| Gross Balance Due as of Date of Repossession | $4,329.86 |
| Security Deposit Rebate | − 175.00 |
| Unpaid Late Charges | + 33.66 |
| Repossession and Resale Expenses | + 156.57 |
| Unpaid Past Due Monthly Payments | + 387.46 |
| Resale Proceeds | −1,250.00 |
| Total Net Deficiency Owed | $3,482.55 |

It is clear from the damages sought by Ford Credit that Moore is not the only party to this action who is confused about the applicability of Article 9 of the U.C.C.[3] The appellee has sought those damages which would be available if it were a secured party and the transaction was an installment sales transaction and not a true lease. The record does not contain an explanation of how Ford Credit arrived at the $4,329.86 amount as "gross balance due," but as there was only one year left on the lease (with less than $2,000 in rental remaining to be paid), it is apparent the appellee included in its calculation of damages an amount for the breach of the purchase option of the vehicle in addition to

record does not indicate whether the newer vehicle was acquired by way of a purchase or lease; however, Moore alleged that the dealership led him to believe that his responsibilities under the lease at issue were absolved by the transfer.

2. Of course, whether a transaction is a true lease or is a secured transaction disguised as a lease is a question of fact, the determination of which involves the examination of a laundry list of factors surrounding the transaction. *See In re Alpha Creamery Co.*, 4 UCCRS 794, 797–98 (W.D.Mich.1967), and D. Leibson and R. Nowka, *The Uniform Commercial Code of Kentucky* § 8.1(B) (1983). We are not remanding for the court to consider this issue, though, as the appellant has not raised this issue, except by impli-

cation, nor has he pointed to any facts that indicate the transaction at issue was anything other than a true lease. Further, Moore was required to return the vehicle at the end of the lease or pay a substantial sum to acquire title of the vehicle, both of which are crucial factors in any consideration of the lease v. secured transaction issue. *Id.*

3. Further example of appellee's confusion is its statement in a memorandum filed in the trial court that although Moore and Mitchell were sent notices of the private sale of the vehicle, neither "redeemed" the car. As this transaction was a lease and not a sale, ownership of the vehicle was never transferred to the lessee, and neither Moore nor Mitchell had any redemption rights in the vehicle.

the future lease payments. The error in this calculation is that nowhere in the lease did Moore agree to purchase the vehicle at the end of the lease period. The purchase option, drafted of course by the lessor, was entirely discretionary and did not obligate Moore to purchase the car. In fact, because he was in default, the lease specifically provided he could not purchase the car.[4] Neither did Moore agree to insure the lease end, or residual, value of the car. There was no provision in the lease agreement that would obligate Moore to pay the lessor the difference, if any, between the proceeds actually realized upon its sale and the anticipated residual value agreed upon between Paducah Ford and Ford Credit at the time the lease was entered. Thus, as a matter of law, the damages awarded Ford Credit are erroneous and the matter must be remanded for the proper determination of damages.

The actual provision in the contract concerning damages in the event of the lessee's default is as follows:

19) Default: If the Lessee fails to make any payment under this Lease when it is due, or if the Lessee fails to keep any other agreement in this Lease, the Lessor may terminate this Lease and take back the Vehicle. The Lessor may go on the Lessee's property to retake the Vehicle. Even if the Lessor retakes the Vehicle, the Lessee must still pay at once the monthly payments for the rest of the lease term and any other amounts that the Lessee owes under this Lease. The Lessor will subtract from the amount owed sums received from the sale of the Vehicle in excess of what the Lessor would have had invested in the Vehicle at the end of the lease term. The Lessee must also pay all expenses paid by the Lessor to enforce the Lessor's rights under this Lease, including reasonable attorney's fees as permitted by law, and any damages caused to the Lessor because of the Lessee's default. The Lessor may sell the Vehicle at public or private sale with or without notice to the Lessee.

■■■■ In simple terms, this provision allows the lessor to obtain possession of the property, terminate the lease and at the same time accelerate the remaining monthly payments due under the lease. Further, if the lessor sells the vehicle, it is allowed to keep the proceeds up to the amount the lessor "would have had invested in the vehicle," presumably the residual value, before applying any sums to mitigate the lessee's damages. We have no problem allowing the lessor to recapture the anticipated residual value before crediting the lessee with any of the proceeds. *See Keeling v. Ford Motor Credit Company*, 314 Md. 311, 550 A.2d 932 (Md.App.1988). However, we hold that the failure of the default provision to discount the accelerated rent to its present value constitutes an unlawful penalty. *See Credit Alliance Corp. v. Adams Construction Corp.*, Ky., 570 S.W.2d 283 (1978). Under Kentucky law, only those liquidated damages provisions which bear a reasonable relationship to the anticipated damages are enforceable. *Miles v. Proffitt*, Ky., 266 S.W.2d 333 (1954). Accelerated rentals that are not discounted do not bear a "reasonable relationship" to actual damages suffered. *See also Taylor v. Commercial Credit Equipment Corp.*, 170 Ga.App. 322, 316 S.E.2d 788 (1984); *United Leasing and Financial Services, Inc. v. R.F. Optical, Inc.*, 103 Wis.2d 488, 309 N.W.2d 23 (1981); and *Northwest Collectors, Inc. v. Enders*, 74 Wash.2d 585, 446 P.2d 200 (1968). Further, since the penalty clause allows the lessor both the car *and* the rental payments (with one year's less depreciation than bargained for), failure to discount the accelerated rents to present value obviously results in the lessor being unjustly enriched.

Therefore, to ascertain the damages appropriate in this matter, the trial court should discount the accelerated rents to

---

**4.** The purchase option is as follows:

Purchase Option: The lessee has the option to purchase the Vehicle at the end of the Lease for *$3200.00*, if the Lessee is not in default under the Lease. The Lessee must notify the Lessor 30 days prior to lease end if the Lessee wants to purchase the Vehicle. Upon payment in cash of the purchase option price plus taxes, the Lessor shall deliver title to the Lessee.

present value.[5] The unpaid late charges ($33.66) can be awarded if they accrued before the repossession of the vehicle. The appellee is also entitled to collect from appellant the repossession and resale expenses. Although the appellant realized no benefit from the sale of the vehicle, he could have benefited had the car brought more than its residual value.

Accordingly, the judgment of the Laurel Circuit Court is affirmed in part and reversed and remanded in part for further proceedings consistent with this opinion.

All concur.

---

5. "The rate of discount should therefore permit the lessor to invest the lump sum award at interest rates currently available in the investment market and recover over the period of the former term of the lease an amount equal to the unpaid future rentals...." *Newco Leasing, Inc. v. Hull,* 167 Cal.App.3d Supp. 1, 213 Cal.Rptr. 202 (1985).