443 So.2d 384 (1983)
U.C. LEASING, INC., Appellant,
v.
BARNETT BANK OF WEST FLORIDA, Appellee.
No. AR-374.
District Court of Appeal of Florida, First District.
December 30, 1983.
*385 Michael T. Webster, P.A., Shalimar, Stanley M. Huggins and Richard L. Winchester, Jr., of Winchester, Huggins, Charlton, Leake & Brown, Memphis, Tenn., for appellant.
Robert E. Lee, Fort Walton Beach, for appellee.
MILLS, Judge.
U.C. Leasing, Inc. (U.C.L.) seeks reversal of a final judgment awarding Barnett Bank of West Florida (Barnett) certain equipment given as collateral by Ft. Walton Manufacturing Corporation (F.W.M.C.) to Barnett under a security agreement between it and Barnett and allegedly leased by U.C.L. to F.W.M.C.
U.C.L. contends that the trial court erred in finding that the leases entered into between it and F.W.M.C. were security agreements and erred in holding that Barnett had an enforceable security interest in the equipment given as collateral by F.W.M.C. We affirm.
On 5 May 1981, J.P. Molin, as President of F.W.M.C., entered into an agreement with U.C.L. entitled "Master Lease of Personal Property."
On 11 May 1981, Molin, as President of F.W.M.C., executed a promissory note in the amount of $65,000 payable to Barnett. In conjunction therewith, he simultaneously entered into a security agreement with Barnett pledging certain described equipment as security. Barnett filed its U.C.C. financing statement in the public records of Okaloosa County on 12 May 1981 and with the Secretary of State on 15 May 1981.
When F.W.M.C. failed to make the quarterly interest payment due on the note, Barnett brought suit to recover the collateral. U.C. moved to intervene, contending that it was the owner of a substantial portion of the property which Barnett sought to recover. The motion was granted.
Final judgment was entered for Barnett. The trial court ruled that the lease agreement between U.C.L. and F.W.M.C. was not a true lease but was an agreement intended for security which constituted a secured transaction governed by the provisions of Ch. 679, Florida Statutes (1981). See § 671.201(37), Florida Statutes (1981). It was further held that the security interest of Barnett was properly filed and was superior to all other claims.
We adopt the trial court's final judgment as the decision of this Court and quote it as follows:
... .
FINDINGS OF FACT
From the evidence presented and the stipulation of certain of the parties, the court finds and determines as follows:
... .
2. U.C. Leasing, Inc. by separate correspondence to the defendant Fort Walton Manufacturing Corp., which correspondence has been introduced into evidence in this cause, specifically granted to Fort Walton Manufacturing Corp., an option to purchase the equipment which was the subject of the various lease agreements between the parties; that such option was for a price which was in all instances less than 15% of the initial price of the equipment and in most instances approximated 10% of the initial price; that notwithstanding the wording of such correspondence indicating that such prices were estimates and that the actual option price was to be fair market value, the overall tenor of such correspondence, including its reference to "lease financing" and "purchasing additional equipment" result in determination by this court that the overall understanding and intention of the parties to *386 the transaction was that Fort Walton Manufacturing Corp. be entitled to purchase the equipment upon expiration of the lease term for the price estimated in such correspondence.
3. The option price required to be paid by Fort Walton Manufacturing Corp. upon expiration of the lease term is nominal when compared to the original cost of the equipment and also nominal when compared to the total rentals payable under the agreement between the parties. [76 ALR3d 11, § 8(b)]
4. The initial payments, monthly payments and option prices as set forth in the various lease agreements and correspondence related thereto are the equivalent of the making of a downpayment, monthly installment payments and balloon payments as would have been the case in a financing transaction and the resulting yield to U.C. Leasing, Inc. is readily equated to a current rate of interest and amortization which would correspond to a rate and amortization charged by a financial institution regularly engaged in the financing of equipment. The testimony of U.C. Leasing, Inc. confirms that these payments are determined and related to the cost of funds and interest rates being charged.
5. U.C. Leasing, Inc. is not regularly involved in the manufacture or sale of equipment, but its business instead consists of procuring equipment at the instruction of a broker or buyer who has previously made arrangements for the purchase of such equipment at a specific price; that U.C. Leasing, Inc. does not negotiate nor procure such price nor participate in any way in the determination of price; that in these particular transactions the price of all new equipment was quoted to the defendant Fort Walton Manufacturing Corp. by a broker for purchase without mention of U.C. Leasing, Inc. or lease arrangements, all as evidenced by written quotations introduced in evidence at time of hearing. [76 ALR3d 11, § 10]
6. All new equipment which was the subject of these transactions was shipped direct to the defendant Fort Walton Manufacturing Corp. and U.C. Leasing, Inc. had no contact with such equipment except to make payment for the same to the vendor; that U.C. Leasing, Inc. does not regularly have inventory available for lease nor facilities or personnel to handle such inventory.
7. U.C. Leasing, Inc., on occasion, requires a guaranty of payment from the vendor or from other third parties which reflects security anxiety indicative that the lease is actually intended for security. [76 ALR3d 11, § 11(a)]
8. The remedies of U.C. Leasing, Inc. set forth in the various lease agreements in the event of default are basically the equivalent of the rights and remedies of a secured party under the provisions of Florida Statutes Chapter 679. [76 ALR3d 11, § 12]
9. The various obligations and entitlements of Fort Walton Manufacturing Corp. under the lease agreements and separate correspondence related thereto are consistent with and indicative of ownership rather than leasing. Such agreements require that Fort Walton Manufacturing Corp. pay taxes, procure insurance, maintain and repair such equipment and bear responsibility for loss and damage and further provide that Fort Walton Manufacturing Corp. shall be entitled to investment tax credit. [76 ALR3d 11, § 15; In Re AAA Machine Co., Inc., 30 B.R. 323 (Bankr.S.D.Fla. 1983).]
10. It appears from the evidence that Fort Walton Manufacturing Corp. had no design other than to obtain the equipment and have someone else finance its cost, while U.C. Leasing, Inc., except for its previously repossessed equipment, had no property to lease and had as its concern only the supplying and financing of such equipment at a profitable earning and to be secure in so doing.
... .
CONCLUSIONS OF LAW
Based upon the foregoing findings of fact the court makes the following conclusions of law:

*387 ... .
2. The lease agreements under consideration between U.C. Leasing, Inc. and Fort Walton Manufacturing Corp. are not true leases but are instead agreements intended for security and thus constitute secured transaction governed by the provisions of Florida Statutes Chapter 679. Such leases contain option provisions which entitle Fort Walton Manufacturing Corp. to become the owner of the equipment described therein for a nominal consideration.
3. The plaintiff Barnett Bank of West Florida is the holder of a security interest properly filed and perfected which is superior to the claim of all other parties to this cause in and to the following described property.
... .
Barnett Bank of West Florida is entitled to possession of such equipment or, in lieu thereof, the funds which the parties have stipulated now represent such equipment.
The final judgment is affirmed.
THOMPSON and WIGGINTON, JJ., concur.