## HIALEAH, INC. v. DADE COUNTY, etc., et al.

Case Nos. 81-19989 CA 15; 82-23864 CA 15; 83-38738 CA 15 and 84-33450 CA 15

Eleventh Judicial Circuit, Dade County

April 9, 1985

### APPEARANCES OF COUNSEL

**Gerry S. Gibson, Steel Hector & Davis,** for plaintiff.
**Daniel A. Weiss,** Assistant County Attorney, for defendants.

### OPINION OF THE COURT

LEONARD RIVKIND, Circuit Judge.

This cause came before the Court for trial on April 4, 1985. Upon consideration of the pleadings, evidence (including the parties' Pretrial Stipulation), and argument of counsel, and based upon applicable law, the Court finds and concludes that:

1. This is a consolidated action contesting the validity of the 1980, 1981, 1982 and 1983 land portion of the real property tax assessment of Hialeah Park Race Track.

2. Plaintiff, Hialeah, Inc., is a Florida for-profit corporation. Defen-

dants are Dade County, a political subdivision of the State of Florida, the County Property Appraiser, and the County Tax Collector. Defendants are responsible for determining and collecting the tax assessments in issue.

3. Hialeah Park Race Track is operated for commercial purposes by Plaintiff as a thoroughbred racing facility, pursuant to the racing permit issued to Plaintiff by the State of Florida.

4. The Defendant Dade County Property Appraiser assessed the subject property as real property taxable to the Plaintiff for 1980, 1981, 1982 and 1983.

5. The Plaintiff-taxpayer filed annual petitions with the Property Appraisal Adjustment Board requesting cancellation of each assessment against the race track. After evidentiary hearings the Board denied these requests.

6. Thereafter the Plaintiff filed the subject actions, seeking cancellation of the land portion of the assessment of Hialeah Park Race Track, refund of real property taxes paid to Dade County, and a declaration that the subject property is exempt from real property taxation because it is a leasehold interest in governmentally owned property. The Plaintiff contends that the property should have been taxed as intangible personal property pursuant to sections 196.199(2)(b) and 199.012(1)(f), Florida Statutes (1983).

7. Notwithstanding the Plaintiff's assertion that the subject property is owned by the City of Hialeah, no evidence was offered at trial that the City of Hialeah considers or treats the subject property as municipally owned real property on any return filed with the Dade County Property Appraiser pursuant to section 193.085, Florida Statutes (1983).

8. The issue now before the Court is whether the Property Appraiser properly determined that the subject property was owned by and assessable to the Plaintiff Hialeah, Inc. as real property or whether such property was entitled to be exempt and/or assessable only as intangible personal property pursuant to section 199.023(1)(f), Florida Statutes (1983).

9. In addition to the stipulation of facts, the parties submitted numerous documents detailing the purchase, financing and operation of the subject property. As evidenced by these documents:

(a) The Plaintiff transferred title to the subject land to the City of Hialeah and simultaneously leased it back with an option to repurchase the subject property for $100 at any time during the lease term

**135**

upon satisfaction of the mortgage debt. The $9,000,000 purchase price paid by the City was used by Plaintiff to satisfy debts on the subject property existing at the time of purchase.

(b) The City issued $9,000,000 in non-recourse notes to fund the purchase of the property. The notes were to be paid exclusively from revenues generated by the property. Neither the full faith and credit nor the taxing power of the City of Hialeah was pledged or offered as security for this indebtedness.

(c) The subject property is encumbered by a first mortgage in the amount of $9,000,000 to secure the notes held by the Southeast Bank, as Trustee for itself and Marine Midland Bank ("The Banks").

(d) Repayment of the $9,000,000 debt on the subject property is unconditionally guaranteed to the Banks by Hialeah, Inc. and by Mr. and Mrs. John J. Brunetti, Mr. Brunetti, Chairman of the Board, President, and sole stockholder of Hialeah, Inc., also granted an irrevocably proxy to The Banks with respect to all the capital stock of Hialeah, Inc.

(e) The Banks also hold a first mortgage on all real property improvements and fixtures of Plaintiff Hialeah, Inc. and a security interest in all of the Plaintiff's personal property, tangible and intangible.

(f) As additional security, the City of Hialeah assigned to the Banks all the City's rights under the lease agreement with respect to the subject land, and all proceeds thereof.

10. Under the rubric "Financing for Hialeah, Inc.", the Banks conditioned their performance as mortgagee upon the following additional conditions precedent:

(a) issuance of an IRS ruling that receipt by the Banks of the 6 percent interest on the notes would be exempt from Federal income tax;

(b) approval of issuance of the notes in a referendum to be paid for by Hialeah, Inc. and/or Mr. and Mrs. Brunetti;

(c) issuance of an unqualified opinion of the State Attorney General and Hialeah City Attorney confirming the City's authority to enter into the purchase agreement, the lease agreement, and the mortgage indenture and to issue the notes.

11. Under the financing documents, all the burdens and obligations of ownership and mortgagor are imposed on Hialeah, Inc., and not on

136

the City of Hialeah. The lease provides for rent equal to and coinciding with debt service payments on the debt to the Banks. Such rent is payable directly to the Banks. Under the documents, the City of Hialeah does not receive a single dollar in rental payments and merely acts as a conduit for the Banks' financing in favor of Plaintiff.

12. Section 697.01(1), Florida Statutes (1983), requires that any instrument conveying real property for the purpose of securing the payment of money, whether such instrument be from the debtor to the creditor or from the debtor to some third person in trust for the creditor, shall be deemed a mortgage. *Torreyson v. Dutton*, 145 Fla. 169, 198 So. 796 (1940). The Court therefore holds that the transaction defined by the instruments in the record constitutes a mortgage as a matter of law, and creates in favor of Hialeah, Inc. more than a mere leasehold interest in the subject land. 1971 Op. Atty. Gen. Fla. 071-254 (August 25, 1971).

13. Furthermore, the Uniform Commercial Code provides in pertinent part that

an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for a nominal consideration does make the lease one intended for security.

Section 671.201(37), Florida Statutes (1983). *U.C. Leasing, Inc. v. Barnett Bank of West Florida*, 443 So.2d 384 (Fla. 1st DCA 1983), *cause dismissed*, 447 So.2d 888 (Fla. 1984). *Accord* 1973 Op.Atty.Gen. Fla. 073-253 (July 13, 1973) (where a lease-purchase contract for equipment provided the lessee with an option to purchase the property at the termination of the lease for little or no consideration, title was treated as a security interest only). As mentioned previously, at any time during the pendency of the mortgage, upon satisfaction thereof, Hialeah, Inc. may exercise the option to purchase the subject property for $100, a consideration which, in light of the facts, this Court finds to be nominal. Consequently, the naked legal title held by the City of Hialeah amounts to no more than a security interest in the subject land.

14. Review of the financing documents here reveals that the financing of the subject property is substantially similar to financing under parts II and III of chapter 159, Florida Statutes (1983), the Florida Industrial Development Financing Act and the Florida Industrial Development Authorities Act. In such industrial development bond situations, the property and the leasehold estate are assessed as real property taxable to the private party, who is deemed the owner for the

137

purpose of ad valorem taxation. Sections 159.31, 159.50 and 196.199(7), Florida Statutes (1983). It would be illogical to tax the subject property differently than property purchased through the use of industrial development bonds.

15. Pursuant to the Plaintiff-taxpayer's own financial records, the Plaintiff considers and treats its interest in the subject property as an ownership interest. For Federal income tax purposes, the Plaintiff has treated the subject property as a land asset of Hialeah, Inc. with a reported value of $9,000,000. Similarly, as reflected in the Plaintiff's audited Financial Statement and based upon the representations and with the approval of Plaintiff's management, Plaintiff's certified public accountant has treated the subject land and its improvements as capital leases, i.e., leases "which transfer substantially all of the benefits and risks similar to the ownership of the property." *Accord Accounting Standards, Current Text, General Standards* (of the Financial Accounting Standards Board), *as of June 1, 1984, 10.102-10.103.*

16. Based on the foregoing and the overwhelming weight of the evidence before it, the Court concludes that the City of Hialeah has no more than naked legal title to the subject land and that Hialeah, Inc. is the true and beneficial fee owner of the subject property. To conclude that Hialeah, Inc. is only a thirty-year lessee on the record presented to this Court is to elevate form over substance. Thus, it is the opinion of the Court that the interest of Hialeah, Inc. in the subject land is not merely a leasehold interest in municipally owned property. The property is therefore subject to ad valorem taxation as real property for the years in dispute.

Accordingly, it is hereby ORDERED AND ADJUDGED that:

1. The Property Appraiser properly assessed the subject property identified by tax roll folio number 04-3107-01-0010 as real property taxable to the Plaintiff for 1980, 1981, 1982 and 1983, and the assessments in dispute are hereby ratified and confirmed in all respects;

2. This cause be dismissed, that Plaintiff take nothing by this action, and that Defendants Dade County, a political subdivision of the State of Florida, and the Property Appraiser and Tax Collector of Dade County, go hence without day.