In the Matter of ANTON'S LOUNGE & RESTAURANT, INC., Debtor.

MICHIGAN CARBONIC COMPANY, Plaintiff,

v.

ANTON'S LOUNGE & RESTAURANT, INC., Defendant.

Bankruptcy No. 83-04959-B.
Adv. No. 84-0081-B.

United States Bankruptcy Court, E.D. Michigan, S.D.

June 4, 1984.

Phyllis A. Kozlowski, Detroit, Mich., for plaintiff.

Bujold, Bailey & Tull by Frank J. Bujold, Troy, Mich., for debtor-defendant.

OPINION

GEORGE BRODY, Bankruptcy Judge.

The question presented is whether the lease involved is a lease or a security agreement. The crucial facts are not in dispute.

On November 29, 1978, Michigan Carbonic Company (plaintiff) entered into an agreement with Anton's Lounge & Restaurant, Inc. (debtor) for the lease of a com-

plex beverage dispenser to be used in the debtor's business. The lease was to extend for thirty-six months, with payments of $437.00 a month. In November of 1980, the lease was modified. The modified lease 1) extends the lease payments for an additional thirty-six months; 2) reduces monthly payments to $350; 4) provides for an automatic renewal at the conclusion of the thirty-six month period; and 4) includes a clause stating: "IT IS UNDERSTOOD AND AGREED BY THE PARTIES HERETO THAT THE WITHIN AGREEMENT IS A LEASE AGREEMENT AND UNDER NO CIRCUMSTANCES MAY IT BE CONSTRUED AS A CONDITIONAL SALES AGREEMENT OR FINANCING AGREEMENT." The final paragraph of the original and modified lease states that the lease may be supplemented by mutual agreement of the parties and that any such supplement will be incorporated into the lease. Concurrently with the execution of the modified lease, the parties added a purchase option which gives the debtor the opportunity to purchase the equipment for $350 at the conclusion of the thirty-six month period.

On November 22, 1983, Anton's Lounge filed a chapter 11 proceeding whereupon Michigan Carbonic Company filed a motion to compel the debtor to either assume or reject the lease. In response to this motion, the debtor contends that the lease is not a true lease but a security agreement and, therefore, it is not required to make any such election. Two reasons are advanced for this conclusion.

1) The agreement contains an option which permits the lessee to purchase the property for a nominal consideration.

2) The lease agreement in its entirety reveals that the transaction was a secured sale and not a lease.

These contentions will be addressed separately.

The Michigan Uniform Commercial Code provides as follows:

Whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security.

M.C.L. § 440.1201(37). The Code provision obviously offers little guidance in resolving concrete problems. Not surprisingly, therefore, this provision has spawned extensive litigation.

Three approaches have emerged to test whether the consideration required to exercise the option to purchase is nominal.

1. Consideration is regarded as nominal if the option price is less than twenty-five percent of the list price of the equipment at the inception of the lease. *In re Alpha Creamery Co.*, 4 U.C.C.Rep.Serv. 794 (Bankr.W.D.Mich.1967).

2. Consideration is regarded as nominal if the option price is less than the fair market value of the equipment at the time that the option may be exercised. *Steele v. Gebetsberger (In re Fashion Optical LTD.)*, 653 F.2d 1385 (10th Cir.1981).

3. The lease is deemed to be a security agreement "[i]f at the end of the term, the only economically sensible course for the lessee is to exercise the option to purchase the property." *Litton Industries Credit Corp. v. Dunn Brothers, Inc. (In re Dunn Brothers, Inc.)*, 16 B.R. 42, 45 (Bankr.W.D. Va.1981); *see also*, J. White & R. Summers, *Uniform Commercial Code*, § 22–3 (2d ed. 1980).

The parties have stipulated that the list price of the property when the lease was entered into was approximately $8,000 and $6,500 when the lease was modified, and that the current fair market value of the property is approximately $1,000. Thus, the option price is at a minimum four percent and at a maximum only five percent of the list price and substantially less than the current projected fair market value of the

property as of the date when the option may be exercised. Moreover, the debtor's only economically sensible course of action is to exercise the option. No dispute exists concerning the necessity of the equipment for the debtor's operations. If the debtor did not exercise the option, he would have no recourse other than to continue making monthly payments of $350 indefinitely since the lease renews itself unless rejected. To do so when it can exercise the option to purchase the property for $350 would obviously not be economically sensible.

 Moreover, even if the option price is more than nominal, a lease may still be deemed to be a security agreement if the provisions of the lease tend to confirm that a secured sale was intended. The presence or absence of an option to purchase is only one factor to be considered in determining whether the agreement is a true lease or whether the agreement, denominated as a lease, is actually a security agreement. M.C.L. § 440.1201(37). The ultimate question is what the parties intended. In determining the intent referred to in section 1–201(37), "[t]he standard used is one of objective rather than subjective measurement." *In re Tucker*, 34 B.R. 257, 260 (Bankr.W.D.Okla.1983). The parties' subjective intent "would not make a true lease of what economic realities might show to be a secured installment sale. To paraphrase Shakespeare's words, a secured transaction by any other name is still a secured transaction, and section 1–201(37) so recognizes." (*In re Fashion Optical LTD.*), 653 F.2d at 1390 (footnote omitted). If the agreement's provisions suggest that the parties intended that the lessee acquire a proprietary interest in the property, the agreement in legal effect is one intended for security no matter what its denomination or the disclaimers contained therein. The factors which indicate that an agreement is one intended for security rather than a lease are the following:

(a) whether the lessee is required to insure the items on behalf of the lessor in an amount equal to the total rental payments,

(b) if risk of loss or damage is on the lessee,

(c) if lessee is to pay for taxes, repairs, damage and maintenance,

(d) whether there exist default provisions governing acceleration and resale of the item,

(e) whether there exists a substantial non-refundable deposit requirement,

(f) when goods are to be selected from a third party by the lessee,

(g) rental payments are a reasonable equivalent of the cost of the items plus interest,

(h) the lease is to be discounted with a bank, and

(i) warranties generally found in a lease are excluded by the agreement.

*In re Tucker*, 34 B.R. at 261. The lease in issue contains a significant number of these provisions. The lease requires the debtor to provide the lessor with insurance in an amount equal to the total lease payments. Since the total lease payments exceed the cost of the goods, the risk of loss is placed on the debtor. The lease requires the debtor to bear, except for the first year, the burden of maintaining and repairing the property. The lease also contains an acceleration clause which makes the entire balance of the lease due upon default. Additionally, upon default all UCC remedies become available to the lessor. The lessor, therefore, pursuant to M.C.L. 440.9504 has the right to repossess and sell the equipment and the right to proceed against the debtor for any deficiency remaining after the sale. The payments under the lease exceed the equipment's original cost plus interest. All warranties are excluded. These factors compel the conclusion that the lease confers on the lessee significant indicia of ownership consistent with a proprietary interest in the property. *See Equilease Corp. v. AAA Machine Co. (In re AAA Machine Co.)*, 30 B.R. 323 (Bankr. S.D.Fla.1983).

For the foregoing reasons, the court concludes that the lease is in legal effect a security agreement.

An order consistent with this opinion is to be submitted for entry.