## In re HOLYWELL CORP., et al., Debtor(s).

## The BANK OF NEW YORK, Plaintiff,

### v.

## OLYMPIA & YORK FLORIDA EQUITY CORP., O & Y Equity Corp., Theodore B. Gould, Miami Center Joint Venture, Defendants.

Bankruptcy No. 84–01590–BKC–TCB.
Adv. No. 85–0566–BKC–TCB–A.

United States Bankruptcy Court,
S.D. Florida.

June 24, 1985.

Vance Salter, Steel, Hector & Davis, Miami, Fla., for plaintiff.

Scott Sheftall, Miami, Fla., Floyd, Pearson, Richman, Greer, Weil, Zack & Brumbaugh, Miami, Fla., for Miami Center J.V.

John Koyzak, Miami, Fla., for O & Y Florida.

Fred H. Kent, Jr., Jacksonville, Fla., for Theodore Gould.

Emmet, Marvin & Martin, New York City, Meyer, Weiss, Rose, Arkin, Shampanier, Ziegler & Barash, P.A., Miami Beach, Fla., for BONY.

## MEMORANDUM DECISION

THOMAS C. BRITTON, Bankruptcy Judge.

The issue here is whether two agreements executed in May 1981, in which Miami Center Joint Venture leased certain personal property to Miami Center Limited Partnership are "true leases" or are in effect conditional sales and therefore "leases intended as security". I conclude that they are true leases.

The personal property is furnishings, fixtures and equipment that were purchased to equip a hotel in Miami. The building is owned and operated by the lessee which is

a chapter 11 debtor in this court. The leased personal property cost $7.8 million.

The lessor joint venture was formed two months before the lease. Its two general partners are T. B. Gould, another chapter 11 debtor in this court, and Olympia and York Florida Equity Corporation (O & Y), which loaned the lessor the $7.8 million that funded the purchase of the equipment. These two partners have been constantly at each other's throat in various courts since shortly after the leases were executed, but they are on the same side here.

Gould is not only one of the general partners of the lessor joint venture, he also controls three other related chapter 11 debtors in this court.

The plaintiff bank was the construction lender for the hotel and office buildings. It is owed $50 million on its mortgage and is the largest creditor of the five related debtors which are dominated by Gould. Its chapter 11 plan to liquidate these five debtors' assets and distribute the proceeds is presently under consideration by this court along with competing plans presented by Gould.

The bank seeks a determination that the two leases are not true leases. The four defendants urge the contrary. The matter was tried on May 30.

If the leases are "true leases", the leases will be "assumed" under 11 U.S.C. § 365 under each of the competing plans. If reorganization fails, a liquidating trustee will also, as a practical matter, require the leased equipment. Assumption requires that the lease defaults be promptly cured. The accrued, unpaid rent to date is between $6.1 and $13 million depending on when the leases commenced, a disputed point not yet addressed by the parties. If the leases are found to be "true leases", no one would receive a windfall or gain any other inequitable advantage.

If on the other hand, the two leases are not "true leases", as the bank argues, the bank will come out of reorganization at least $10 million ahead of what it stands to recover if the two leases are given effect.

This would be a complete windfall for the bank. The principal loser will be O & Y, which provided the purchase money for the equipment. No rent has ever been paid on the leases. O & Y's only recourse is against the lessor, which would lose title to the equipment and would itself become the holder of a worthless claim against the lessee for an unperfected security interest. Similarly, O & Y's claim against the lessor would be a claim as an insider, which would be behind all the claims of other creditors. O & Y's claim would be rendered virtually worthless.

The predicate for the bank's contention is UCC § 1–201(37), *Fla.Stat.* § 671.201(37):

"(37) 'Security interest' means an interest in personal property or fixtures which secures payment or performance of an obligation ... Unless a lease or consignment is intended as security, reservation of title thereunder is not a security interest, but a consignment is in any event subject to the provisions on consignment sales (s.672.326). Whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security."

A "security interest" if not perfected becomes unenforceable against a bankruptcy trustee, 11 U.S.C. § 544, and therefore against the lessee here, which is a chapter 11 debtor-in-possession. 11 U.S.C. § 1107(a). These leases expressly prohibited the assertion or perfection of any security interest against the lessee.

The leases were executed for each party by Gould in his capacity as general partner of each entity. He denies any intention to create anything other than a true lease. It is undisputed that Metropolitan Life, the prospective permanent lender for the build-

ings, insisted that the equipment be leased and there be no perfected security interest against the property. It also reviewed and approved the leases, as did the plaintiff bank, before they were executed. Metropolitan's motives do not appear in this record. It has not been suggested that Gould had anything to gain by leasing the equipment rather than by purchasing it with borrowed funds collateralized by the equipment. I am satisfied that his only motive was to satisfy Metropolitan.

Until this action was filed six weeks ago, no one has suggested that the leases are not true leases any time during the four years they have been in existence. Indeed, the bank's disclosure statement supporting its plan describes and treats the leases as leases, not as disguised conditional sales.

Neither the history nor the form of the documents, the direct testimony of the parties as to their intent, nor the contemporaneous acts of the parties support the bank's contention that the parties intended a conditional sale rather than a true lease. It is the bank's argument that the terms of the leases compel the conclusion that the parties in fact intended a conditional sale.

In *American Standard Credit Inc. v. National Cement Co.*, 643 F.2d 248, 261 (5th Cir.1981) the court noted that the question whether particular transactions are "true leases" or "leases intended as security" is one of the most hotly litigated topics in commercial law, that there is considerable conflict among the various jurisdictions, and that federal courts are bound to apply the interpretations of the applicable State court "insofar as such interpretation may be discerned." It dealt with an Alabama lease.

Florida law is controlling here and the only reported case from a Florida court is *U. C. Leasing, Inc. v. Barnett Bank of West Florida*, 443 So.2d 384 (Fla.Dist.Ct. App.1983). This decision affirmed a trial court's holding that a bank's perfected security interest in certain equipment was superior to a purported lessor's claim which had not been recorded as a security agreement. The trial court found the equipment lease to be not a "true lease" but rather a "secured transaction."

In this reported decision, neither the lessor nor the bank stood to gain a windfall. Each was the innocent victim of a merchant who executed separate inconsistent agreements, first to lease from the lessor then to pledge the leased equipment to the bank for a loan.

Neither this decision nor any I have seen applied UCC § 1–201(37) where the result is to give one party a windfall at the expense of an innocent party. The legislative purpose was to protect the lessee's other creditors from fraud and deception. There is nothing in the record before me that suggests that anyone was misled or deceived by the leases in question here. Certainly the bank was not misled or deceived in anyway.

UCC § 1–102(1), *Fla.Stat.* § 671.102(1), requires that:

"This code shall be liberally construed and applied to promote its underlying purposes and policies."

To construe and apply the code to produce the result urged here by the bank would defeat the purpose and policy of the code. It is a shield, not a sword.

Furthermore, the Florida court identified certain features of the transaction before it which prompted its conclusion, at least four of which are absent in our case.

1. There, the option price given the lessee to acquire title was "nominal" about 10% of the initial price. In our case the option price is *the greater of the unrecovered original cost or the market value* at the time the option is exercised. The only evidence of market value is an appraisal eight months ago of $7.7 million, 99% of the purchase price. I find that plaintiff has failed to carry its burden of showing that the option price would be "nominal" at any time during the 60-month life of these leases.

2. There, the initial payments, monthly payments, and option prices were readily equated to the current rate of interest and

the lessor admitted that the payments were determined by and related to the cost of funds and interest rates. Of course, every lessor must consider and try to recoup its investment, but in our case, there was no down payment, no such congruency, and no such admission as was before the Florida court. We have two leases executed on the same day involving the same kind of property, but which produce two different rates of return for the lessor.

3. There, the lessor required a guaranty of payment. There is none here.

4. There, the lessee was granted the investment tax credit. Here, the lease gives it to the lessor which has used it.

*U.C. Leasing,* therefore, is readily distinguishable from the case before this court.

In *American Standard Credit,* the Fifth Circuit reversed the district court's holding that the equipment lease in question there was not a true lease. The seven factors which the court found to be crucial to its conclusion are each paralleled here. *Id.* at 266.

I have made no reference to defendants' argument that plaintiff is estopped or has waived its right to make the argument it has made here, because I do not find the elements of either defense in this record. No party justifiably relied to its detriment on any conduct of the plaintiff and there is no clear evidence of an intent on the part of the bank to give up this contention.

The bank has asked, in the alternative, that this court define what must be paid to the lessor to assume and cure the lease default. The parties have neglected this issue and a further hearing will be held on Monday, July 8, 1985, at 9:30 a.m., in Courtroom 1406, 51 S.W. 1 Avenue, Miami, Florida, to consider (a) motions for rehearing, (b) to hear the parties on the amount required to cure the lease defaults, (c) to hear any other issue necessary to the entry of a judgment in this adversary proceeding and, (d) to consider the effect of this decision on the pending chapter 11 plans.