**In re Frederick YOST, Barbara Yost, Debtors.**

**Bankruptcy No. 18200581.**

United States Bankruptcy Court, W.D. Kentucky.

Nov. 14, 1985.

Honorable Phillip Huddleston, Bowling Green, Ky., for debtors.

C. Joseph Greene, Louisville, Ky., for Leasing Service Corp.

## MEMORANDUM OPINION

MERRITT S. DEITZ, Jr., Bankruptcy Judge.

The present action comes before the court out of a dispute between the debtors, Barbara and Frederick Yost, and Leasing Service Corporation (LSC) over the amount and relative priority of LSC's claim. This court has core proceeding jurisdiction under the provisions of 28 U.S.C. §§ 157(b)(2)(B) and (K).

\* \* \* \* \* \*

On April 20, 1981 the Yosts d/b/a Petro Drill entered into an agreement styled a lease with the Illinois Rotary Drilling Corporation. Illinois Rotary immediately assigned its rights and interest under this contract to LSC. The terms of the agreement provide, *inter alia* that:

(1) the term of the lease is for 60 months plus a series of one-year renewal options, with the lessee to give 60 days notice of termination, and monthly rental payments of $8,250;

(2) the lessor makes no warranties with respect to the equipment;

(3) the lessee must, at its own expense, keep the equipment in good repair and working order;

(4) all equipment, accessories and parts added to the drilling rig during the term of the lease shall become the property of the lessor;

(5) the lessee assumes the entire risk of damage to the equipment during the period of the lease;

(6) in the event the equipment is lost, stolen or damaged beyond repair, the lessor at its option may replace the equipment at the lessee's expense and receive the current value of the equipment plus 25% of total unpaid rents;

(7) the lessee indemnifies the lessor from any liability arising out of the ownership, operation, use or control of the equipment;

(8) the lessee keeps the equipment insured against all risks of loss or damage and shall deliver the insurance policies to the lessor;

(9) the lessor will receive 30 days notice before the cancellation or alteration of any insurance policy covering the equipment;

(10) the lessee is liable for fees, assessments, charges and taxes incurred in con-

nection with the use of the drilling equipment;

(11) title to the equipment remains with the lessor;

(12) no purchase option is available to the lessee;

(13) the lessee grants a security interest in the leased equipment and in all inventory, goods, equipment, fixtures and assets the lessee presently owns or hereafter acquires;

(14) the lessor has the right to inspect the equipment and to remove it without notice to the lessee if it is being improperly used or maintained;

(15) the lessee shall, at its own cost, return the equipment to the lessor at the end of the lease term;

(16) upon the lessee's noncompliance with the contract, insolvency or bankruptcy, the lessor may accelerate all amounts to become due, plus costs of repossession, and take the property without notice.[1]

\* \* \* \* \* \*

The Yosts filed for Chapter 11 reorganization in December, 1982, and three months later entered into an agreed order with LSC rejecting the drilling equipment lease and allowing LSC to repossess its equipment. During the intervening three months the drilling equipment was disabled and in storage, and during that time the debtor received no benefit from the use or possession of the equipment.

\* \* \* \* \* \*

■ Our initial question is whether the contract in issue is a lease or a security

agreement. When determining the character of an agreement, the use of the term "lease" or "security agreement" is not controlling.[2] Whether an agreement is a true lease or a security agreement is determined by the objective intent of the parties at the contract's formation.[3] In determining the intent of the parties a court must look to the contents of the document, the factual setting of the contract, and the subsequent treatment of the agreement by the parties. Cases which have discussed this problem have listed a number of factors to be considered when determining the true nature of an agreement:

whether (1) there is an option to purchase for a nominal sum at the end of the lease term, (2) the lease grants the lessee an equity or property interest, (3) the lessor's business is that of a financing agency, (4) the lessee pays sales tax incident to the acquisition, or pays all other taxes normally associated with ownership, (5) the lessee is responsible for comprehensive insurance, (6) the lessee is required to maintain the equipment at its expense, (7) the agreement places the risk of loss on the lessee, (8) the agreement permits the lessor to accelerate the payment of rent upon default, or provides the lessor with other remedies similar to those of a mortgagee, (9) the lessee is required to pay a substantial security deposit, (10) a financing statement is executed by the lessee in connection with the lease; (11) there are default provisions inordinately favorable to the lessor, (12) the lease provides for liquidated damages, (13) a lease provision disclaims warranties, (14) the aggregate

---

**1.** Further remedies available to LSC under the terms of the agreement include:

1) retaining the equipment, selling the equipment and applying the net proceeds of the sale, less 15% of the total rent, to the lessee's obligation or releasing the equipment and crediting the lessee with the reasonable rental value;

2) retaining all prior rental payments made under the agreement; and

3) "any other remedies permitted by law or equity"

**2.** *Matter of Anton's Lounge and Restaurant, Inc.,* 40 B.R. 134 (Bkrtcy.E.D.Mich.1984); *In re Winckler,* 38 B.R. 103 (Bkrtcy.D.N.D.1984); *In re Coors of the Cumberland, Inc.,* 19 B.R. 313 (Bkrtcy.M.D.Tenn.1982).

**3.** *In re Ram Manufacturing, Inc.,* 45 B.R. 663 (Bkrtcy.E.D.Pa.1985); *In re Air Vermont, Inc.,* 44 B.R. 440 (Bkrtcy.D.Vt.1984); *In re Noack,* 44 B.R. 172 (Bkrtcy.E.D.Wis.1984); *In re Catamount Dyers, Inc.,* 43 B.R. 564 (Bkrtcy.D.Vt. 1984).

rentals approximate the value of the subject matter of the lease.[4]

After reviewing the factors listed above, we conclude that the agreement between the Yosts and LSC was a true lease and not a disguised security agreement. While many of the contract terms resemble those of a secured transaction, we consider the lessor's unequivocal retention of control and ownership over the equipment, and the absence of any purchase option, as determinative. Our view is consistent with the only reported Kentucky decision on this issue, *Diaz v. Goodwin Brothers Leasing, Inc.*,[5] holding a similar contract to be a true lease.

Having decided the basic character of the contract, we now consider whether LSC is entitled to an administrative expense claim under 11 U.S.C. § 503.

Section 503 provides that: "After notice and a hearing, there shall be allowed, administrative expenses, ... including—(1)(A) the actual and necessary costs and expenses of preserving the estate ..." There is little difference between this Section and Section 64(a)(1) of the former Bankruptcy Act, and therefore "the body of law that grew up interpreting § 64(a)(1)

has value as precedent in interpreting 11 U.S.C. § 503(b)(1)(A)"[6].

The main criterion for evaluating a claim for administrative expenses is the actual value of the goods or services to the estate. A claim qualifies as a Section 503(b)(1)(A) expense only to the extent that the goods or services it represents were necessary for the preservation of the estate. With respect to unexpired leases, it is well settled that for the period between the filing of the bankruptcy and the assumption or rejection of the debtor's lease, a creditor is only entitled to an administrative expense for the reasonable value to the estate of the use or occupancy of the property.[7] This measure of § 503 administrative expenses applies to both leases of real property and leases of personal property.[8]

It is undisputed here that the debtors' estate received no benefit from the leased equipment between the filing of the Chapter 11 petition and the formal rejection of the lease. Therefore LSC is not entitled to an administrative expense claim under § 503(b)(1)(A) of the Bankruptcy Code.[9]

**4.** *In re Catamount Dyers, Inc.*, 43 B.R. at 567.

**5.** 511 S.W.2d 680 (Ky.1974). State law is controlling on the issue of whether an agreement between two parties is a security agreement or a lease. *See In re Holywell Corp.*, 13 BCD 446, 51 B.R. 56 (Bkrtcy.S.D.Fla.1985).

**6.** *In re Peninsula Gunite, Inc.*, 24 B.R. 593, 594 (B.A.P. 9th Cir.1982).

**7.** *In re Airlift International*, 761 F.2d 1503 (11th Cir.1985); *In re Fredrick Meats*, 483 F.2d 951 (9th Cir.1973); *American Anthracite & Bituminous Coal Corporation v. Leonardo Arrivabene, S.A.*, 280 F.2d 119 (2d Cir.1960); *In re Peninsula Gunite, Inc.*, 24 B.R. at 593; *In re Dixie Fuels*, 13 BCD 584, 52 B.R. 26 (Bkrtcy.N.D.Ala.1985); *In re Gourmet Gallery, Inc.*, 27 B.R. 912 (Bkrtcy.E.D.Pa.1983); *In re Rhymes, Inc.*, 14 B.R. 807 (Bkrtcy.D.Conn.1981).

**8.** *See Id.*

**9.** *See generally In re Dixie Fuels*, 13 BCD at 584. Our decision to deny LSC an administrative expense does not conflict with either the Sixth Circuit's holding in *Dayton Hydraulic Co. v. Felsenthall*, 116 F. 961 (6th Cir.1902) or our own ruling in *In re Royal International Corp.*, 30 B.R.

750 (Bkrtcy.W.D.Ky.1983) *Dayton Hydraulic* and *Royal International* stand for the proposition that where a debtor in possession receives a benefit from the use, occupancy or possession of rental property and that benefit is not de minimis, the lessor is entitled to receive the contractual rental rate as an administrative expense, rather than the fair rental value of the property, considering its specific use by the debtor. This rule is based as much on judicial economy considerations as it is on equity grounds. The need for a judicial determination of the reasonable use-value of rental property in the hands of the debtor in possession would give rise to many lengthy and complex evidentiary hearings on this issue in most Chapter 11 proceedings.

In this case, however, it is undisputed that the leased equipment was of no value to the estate during the period between the filing of the Chapter 11 and the debtor's formal rejection of the contract. In fact the evidence shows that the equipment was a burden to the estate due to the cost of storing it. It takes no great insight to perceive that rental expenses of property that is not beneficial to the Chapter 11 debtor, are not "actual, necessary costs and expenses of preserving the estate". To apply the "contract-rate" rule of *Dayton Hydraulic* in situations such as

That finding, however, does not mean that LSC has no claim at all against the debtors' estate. In the recent opinion of *In re Airlift International, Inc.*[10], the 11th Circuit could have been characterizing LSC's situation:

> Our review indicates there are three general situations involving executory contracts or unexpired leases where the effect of a breach by the debtor or trustee must be considered: (1) where the trustee elects not to assume an ongoing executory contract or unexpired lease and rejects it, (2) where the trustee assumes an ongoing executory contract or unexpired lease prior to confirmation of the plan, and (3) where the trustee during reorganization proceedings enters into a new executory contract.
>
> In the first instance where the contract is not assumed prior to confirmation, *the breach of the executory contract or unexpired lease is deemed to have occurred pre-petition, giving rise to a pre-petition claim under section 502(g), but not an administrative expense under section 503(b).* [Emphasis added]

We now determine the nature and amount of LSC's claim against the debtor.

LSC argues that the amount of its claim should be controlled by the liquidated damages clause of its agreement.[11] LSC's self-described "generous" claim against the debtor under this provision amounts to over $482,000. The total rent due[12] during the 5–year term of the lease was only $495,000, and the debtors returned the equipment to LSC less than 3 years after the lease began. Further, LSC has received $116,840 in rental payments and $165,770 in insurance payments and proceeds of sale of the drilling equipment.

■ Under Kentucky law liquidated damage provisions are allowed.[13] However, Kentucky courts will not enforce liquidated damage provisions which constitute a penalty.[14] In order for a court to find that a liquidated damage provision is an unenforceable penalty the party arguing against the provision must demonstrate that in the time and place of the contract the amount of stipulated damages were far in excess of the damages that would actually flow from a breach.[15]

■ Accepting LSC's calculation of damages as correct, we find that the liquidated damage provision of the LSC lease is unenforceable as a penalty under Kentucky law. If the provision were upheld, LSC would receive payment for 27 months of unearned rent and over $186,000 in late charges calculated at 24% per annum, a windfall of

---

this would mean that *all* rental payments occurring between the filing of a Chapter 11 petition and the rejection of a rental contract would be entitled to administrative expense priority, no matter how burdensome or beneficial the lease property was to the estate.

10. 761 F.2d at 1503, 1508–09.

11. See note 1, *supra.*

12. The total rent due under the lease was $531,-340. However the debtors were required to make an advance rental payment of $36,340. The record does not disclose what amount of advance rent was paid. LSC stated in its brief that the unpaid balance due it under the agreement on the date of default, July 20, 1982, was $380,924.50.

13. Both case law, *Woodbury v. Turner, et al,* 96 Ky. 459, 29 S.W. 295 (1895); *Miles v. Proffitt,* 266 S.W.2d 333 (Ky.1954); *Coca-Cola Bottling Works v. Hazard Coca-Cola Bottling, et al,* 450 S.W.2d 515 (Ky.1970) and Kentucky's version of the Uniform Commercial Code permit liquidated damage provisions in contracts. *See* Kentucky Revised Statutes § 355.2–718.

14. *Uncle George Orphans Home, Inc. v. Landrum,* 551 S.W.2d 582 (Ky.App.1977); *Coca-Cola Bottling Works v. Hazard Coca-Cola Bottling Works,* 450 S.W.2d at 518. *Real Estate & Mortgage Co. of Louisville v. Duke,* 251 Ky. 385, 65 S.W.2d 81 (1933).

15. Kentucky courts have at different times expressed this test in terms of the reasonableness of the liquidated damages (*Real Estate & Mortgage Co. of Louisville v. Duke,* 65 S.W.2d at 81), whether they were grossly disproportionate to the damage which might flow from a breach (*Coca-Cola Bottling Works v. Hazard Coca-Cola Bottling Works,* 450 S.W.2d at 518) as well as in terms of the excess of liquidated damages over actual damages. We believe these different "tests" to merely be different wordings of the same general standard. *See Uncle George Orphans Home v. Landrum,* 551 S.W.2d at 584.

unacceptable proportion. Even in the absence of bankruptcy considerations the punitive aspect of the provision would stand out in bold relief.

LSC has made no showing that either the economics of the oil equipment trade or the difficulty of proving actual damages make this facially invalid provision a reasonable liquidated damage clause. Rather, it has relied on the summary "boiler-plate" statement in this contract that "any amounts to be retained by [LSC] and any sums to be paid by [the debtors] under this [liquidate damages provision] shall not be construed as a penalty." Such a legal result is not warranted by the facts and we will not permit it.

In conclusion, our determination that the liquidated damages provision of the equipment lease is unenforceable means that LSC is entitled to a claim against the debtor for only the provable damages which arose from the rejection of the lease.[16] Since the record is not sufficiently detailed to permit an independent judicial determination of those damages, we will allow the parties to present additional evidence on the issue. We also decline to rule today on the question of whether LSC has a valid security interest in assets of the debtor, and will leave that decision to a later, more appropriate, forum.

A separate order will be entered today reflecting our findings and setting a pretrial conference for this matter.

---

16. *In re Robinson,* 49 B.R. 575 (Bkrtcy.W.D.Ky. 1985).