S & B CONSTRUCTION, LLC, f/k/a The Skinner & Broadbent Construction Company, LLC, Greystone Architects, Inc., T–G Enterprises, Ltd., d/b/a Gloyd Concrete, and J–D Realty, LLP, Appellants–Defendants,

v.

OLD FORT, LLC, Neal F. Harding, Lawrence A. Shapin, Maurice E. John, Jr., MD., Robert D. Knox, M.D., and Branch Banking & Trust Co., f/k/a Bank of Louisville, Appellees–Plaintiffs.

No. 02A05–0401–CV–55.

Court of Appeals of Indiana.

April 25, 2005.

Rehearing Denied June 7, 2005.

R.C. Richmond, III, Sommer Barnard Ackerson, PC, Indianapolis, IN, Attorney for Appellants S & B Construction, LLC, f/k/a The Skinner & Broadbent Construction Company, LLC, and Greystone Architects, Inc.

R. John Wray, Wray Law Office, Fort Wayne, IN, Attorney for Appellants T–G Enterprises, Ltd., d/b/a Gloyd Concrete, and J–D Realty, LLP.

Steven J. Ouelette, Fort Wayne, IN, Attorney for Appellees Harding, Shapin, John & Knox.

## OPINION

KIRSCH, Chief Judge.

S & B Construction, LLC, Greystone Architects, Inc., Gloyd Concrete, and J–D Realty, LLP (collectively, the "lienholders") bring this interlocutory appeal from the entry of partial judgment in favor of Neal Harding, Lawrence Shapin, Maurice John, Jr., Robert Knox (collectively, "Old Fort's members"), Old Fort, LLC, and Branch Banking & Trust Co. (the "Bank"). Specifically, the lienholders raise the following dispositive and restated issue: whether the trial court erred in concluding that judicial estoppel did not apply to this case.

We reverse and remand.

### FACTS AND PROCEDURAL HISTORY

In August 1998, Oldenberg Brewing Company ("Oldenberg") acquired the right to purchase real estate in Fort Wayne, Indiana. Three months later, Oldenberg assigned its right to purchase the real estate to Old Fort. Old Fort, in turn, agreed to purchase the real estate and to contemporaneously lease it back to Oldenberg pursuant to a fifteen-year commercial lease agreement. Under the terms of the lease agreement, Oldenberg agreed to build a brewpub/restaurant on the real estate and to pay rent to Old Fort. Oldenberg also agreed to finance Old Fort's purchase of the real estate by loaning Old Fort $233,630 and by guaranteeing an additional $450,000 loan from the Bank. The $233,630 loan was evidenced by a promissory note (the "Note") executed by Old Fort as the maker and with Old Fort's members as guarantors. The Note was also secured by a first mortgage against the real estate (the "Oldenberg Mortgage"), which was recorded on November 16, 1998.

Oldenberg initially took steps to have the restaurant constructed as required by the terms of the lease, hiring Greystone Architects as the architect to prepare the plans and specifications for the project. Oldenberg also hired S & B as the general contractor to build the brewpub. S & B, in turn, hired Gloyd and O'Neal Excavating, Inc. as subcontractors. After Greystone, S & B, Gloyd, J–D, and O'Neal had begun providing services, labor, and mate-

rials, Oldenberg became insolvent. *Appellants' Brief* at 8. The project was abandoned, and Oldenberg ultimately filed for bankruptcy.

In 1999, S & B, Greystone, Gloyd, J–D, and O'Neal all timely filed mechanic's liens against the real estate. Then, after obtaining relief from the automatic stay in Oldenberg's bankruptcy case, S & B and Greystone filed this action to foreclose their mechanic's liens on May 31, 2000. S & B subsequently paid O'Neal and took an assignment of O'Neal's mechanic's lien rights and claims. Oldenberg initially filed for reorganization under Chapter 11 of the Bankruptcy Code. However, the case was converted to a Chapter 7 liquidation proceeding, and the court appointed a bankruptcy trustee. At that time, Oldenberg's rights under the Oldenberg Mortgage passed to the bankruptcy trustee, Charles J. Freihofer (the "Trustee"). Counsel for Old Fort sent a letter to the Trustee's counsel asserting that Old Fort had setoffs and claims against the amounts it owed to Oldenberg based on Oldenberg's breach of the lease and proposing that the Trustee accept $50,000 from Old Fort's members in exchange for the assignment to them of the Oldenberg Mortgage. In reliance on the representations in the letter, the Trustee agreed to sell the Oldenberg Mortgage to Old Fort's members for $50,000.

Pursuant to their agreement, the Trustee and Old Fort filed with the bankruptcy court a Joint Motion for Sale of Assets Pursuant to 11 U.S.C. § 363 (the "sale motion") requesting an order approving the sale and assignment of the Note and Oldenberg Mortgage to Old Fort's members for $50,000. In the sale motion, Old Fort again stated that there were significant and meritorious setoffs and claims against the amounts owed to Oldenberg by Old Fort that rendered the agreed price significantly higher than what could be obtained through enforcement of the Oldenberg Mortgage. Old Fort further agreed to subordinate in the bankruptcy any claim it may have against Oldenberg and that if the real estate could be sold, any sale proceeds exceeding the cost of sale, mortgages, and filed mechanic's liens would be evenly split with the Trustee. On February 9, 2001, the bankruptcy court granted the sale motion. Old Fort's members therefore paid the Trustee $50,000, and the Trustee assigned both the Note and Oldenberg Mortgage to Old Fort's members on March 29, 2001.

In the trial court, S & B, Greystone, Gloyd, and J–D all filed motions for summary judgment, alleging that the Oldenberg Mortgage was only entitled to priority over their mechanic's liens in an amount not exceeding $50,000. The trial court ordered that Old Fort's members be substituted for Oldenberg as purchasers of the Oldenberg Mortgage from the Trustee. Old Fort's members then filed to recover from Old Fort the entire $233,630 principal balance of the Oldenberg Mortgage plus default interest and late fees. Additionally, Old Fort's members sought recovery of attorney fees incurred to foreclose the Oldenberg Mortgage. S & B and Greystone filed a response, asserting as an affirmative defense that the claims of Old Fort's members were barred by the equitable doctrine of judicial estoppel. Thereafter, the trial court held the summary judgment hearing and denied the motions with a one-sentence order that did not explain its reasoning.

Following an unsuccessful mediation, the case went to trial on September 9, 2003, on only two issues: the defense of judicial estoppel and the amount due and owing on the Oldenberg Mortgage, including whether the Note's terms concerning default interest and late fees were unenforceable as penalties. Terms of the Note provided

for both the imposition of an eighteen percent per annum default interest rate and a five percent per month late fee, which together totaled approximately $3.57 million.

On December 30, 2003, the trial court entered its findings of fact and conclusions thereon, finding that the sale motion granted by the bankruptcy court, pursuant to which the Note and Oldenberg Mortgage were sold and assigned to Old Fort's members, "compromised the claims that Old Fort [had] against Oldenberg." *Appellants' Appendix* at 58. The trial court concluded that judicial estoppel was inapplicable to this case and that Old Fort's members were entitled to default interest and late fees pursuant to the terms of the Note. The trial court entered partial judgment in favor of Old Fort's members for the entire $233,630 principal amount plus accrued interest and late fees totaling $3,809,123.09 and ordered that the real estate be sold once the trial court determined the amount of the parties' reasonable costs, expenses, and attorney fees. The lienholders now appeal.

## DISCUSSION AND DECISION

When, as here, the trial court enters findings of fact and conclusions thereon pursuant to Indiana Trial Rule 52(A), we utilize a two-tiered standard of review. *Weiss v. Harper*, 803 N.E.2d 201, 204–05 (Ind.Ct.App.2003). First, we determine whether the evidence supports the trial court's findings, and then whether the findings support the judgment. *Id.* at 205. Special findings are adequate to support the judgment only if they disclose a valid basis for the legal result reached by the trial court. *Indiana Family & Soc. Servs. Admin. v. Amhealth (Evansville), Inc.*, 790 N.E.2d 162, 165 (Ind.Ct.App.2003).

We will not disturb the trial court's findings or judgment unless they are clearly erroneous. *Weiss*, 803 N.E.2d at 205. Findings of fact are clearly erroneous when the record lacks any reasonable inference from the evidence to support them. *Id.* A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. *Id.* We will neither reweigh evidence nor judge the credibility of witnesses, but will consider only the evidence favorable to the judgment and all reasonable inferences to be drawn therefrom. *Id.*

The lienholders first argue that the trial court erred in concluding that judicial estoppel does not apply to this case. Specifically, the lienholders contend that because Old Fort's members successfully had the Note and Oldenberg Mortgage assigned to them for $50,000 by alleging various setoffs in the bankruptcy proceedings, they are now judicially estopped from recovering a judgment in excess of $3.8 million without acknowledging those setoffs.

Judicial estoppel protects the essential integrity of the judicial process by preventing a party and its counsel from "playing fast and loose" with the courts. *GEICO Ins. Co. v. Rowell*, 705 N.E.2d 476, 481 (Ind.Ct.App.1999). A party may not assert a position in a legal proceeding inconsistent with one previously asserted. *Am. Family Mut. Ins. Co. v. Ginther*, 803 N.E.2d 224, 234 (Ind.Ct.App.2004).

> It is the general rule that allegations or admissions in pleadings in a former action or proceeding will ordinarily estop the party making them from denying their truth in a subsequent action or proceeding in which he is a party to the prejudice of his opponent where the usual elements of estoppel by conduct are present. Also, there must have been a determination of the prior action, or, at

least, the allegations or admission must have been acted on by the court in which the pleadings were filed or by the parties claiming the estoppel.

*Id.* at 234–35 (quoting *Tobin v. McClellan,* 225 Ind. 335, 346–47, 73 N.E.2d 679, 684 (1947)).

As indicated by a letter from Peter L. Quebbeman to Paul Vesper (the Trustee's counsel), Quebbeman and his law firm (Berg & Jones, PLLC) were "co-counsel" with Mark Sandlin for both Old Fort, LLC and Old Fort's members. *Plaintiff's Exhibits, Vol. III, Exhibit 31.* Within that letter were descriptions of the setoffs and claims against the amounts owed by Old Fort under the Note, most significantly, damages from Oldenberg's breach of their lease agreement. In reliance on this letter, the Trustee filed a joint sale motion with counsel for Old Fort seeking an order approving the transfer of the Note and Oldenberg Mortgage to Old Fort's members in return for $50,000. *Appellants' Appendix* at 225. The motion stated that "the Trustee and Old Fort believe ... that the agreed price for the Note and Mortgage is the best possible price to be obtained and is significantly higher than that which would be obtained either through an enforcement of the Note and Mortgage by the Trustee or other liquidation." *Id.* at 228–29. The motion then specifically mentioned the "significant and meritorious setoffs and claims against the amounts owed to the Debtor [Oldenberg] by Old Fort" as the reason for approving the proposed sale. *Id.* at 229. The information included in the motion was quite clearly relied upon by the bankruptcy court in its order approving the sale of the Note and Oldenberg Mortgage to Old Fort's members when it stated that "There is a significant risk of the estate not obtaining the price called for herein if the property were to be liquidated by the Trustee in that the property is subject to large and potentially

meritorious claims constituting setoffs to any amount sought by the Trustee...." *Id.* at 256.

■ Identity of parties is not necessary for the application of judicial estoppel. *See Wabash Grain, Inc. v. Smith,* 700 N.E.2d 234, 238 (Ind.Ct.App.1998). Although it was Old Fort, and not its members, which made the above representations to the bankruptcy court, the identity of interests between the two is such that Old Fort, LLC and Old Fort's members are essentially one and the same. In *Bartle v. Health Quest Realty VII,* 768 N.E.2d 912 (Ind.Ct.App.2002), we held that the guarantor of a lessee's rent obligation was collaterally estopped from relitigating the bankruptcy court's determination of the amount due for breach of the lease because the guarantor and the lessee were "essentially one entity." *Id.* at 921. Although *Bartle* was decided in the context of collateral, not judicial, estoppel, the principles upon which it was decided are instructive here. In that case, the lessor entered into four leases with Delmar. Bartle, the ninety-nine percent limited partner of Delmar and majority shareholder of Delmar's one percent limited partner and general partner, Burlington, personally guaranteed the leases. Delmar defaulted on the leases and filed for bankruptcy. The lessor filed suit against Bartle as the guarantor, seeking judgment for the full amount owed by Delmar. Bartle was present for the entirety of and testified at the bankruptcy proceeding. The bankruptcy court determined the obligations owed by Delmar to the lessor and entered an order on Delmar's stipulation regarding Delmar's liability for the lessor's attorney fees and expenses. The lessor then sought summary judgment in its action against Bartle, alleging that all factual issues had been resolved in the bankruptcy court. The trial court granted the lessor's motion

for summary judgment and Bartle appealed. In holding that the lessor was entitled to use offensive collateral estoppel to preclude Bartle from relitigating his obligations as guarantor of the leases, we noted that Bartle was in privity with Delmar and had an incentive to litigate the issue of liability before the bankruptcy court because Delmar's liability was his liability. *Id.* at 921. We specifically noted Bartle's near-sole ownership of the company involved in the bankruptcy proceedings and that during the bankruptcy proceedings, Bartle was not only present but "was kept up-to-date by Delmar's counsel and made all of the strategic decisions on behalf of the entity." *Id.*

*Bartle* also quoted the following language from the RESTATEMENT (SECOND) OF JUDGMENTS:

> The judgment in an action by or against the [closely held] corporation is conclusive upon the holder of its ownership if he actively participated in the action on behalf of the corporation, unless his interests and those of the corporation are so different that he should have opportunity to relitigate the issue.

*Id.* at 919 (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 59(3)). Comment to that section provides:

> For the purpose of affording opportunity for a day in court on issues contested in litigation, however, there is no good reason why a closely held corporation and its owners should be ordinarily regarded as legally distinct. On the contrary, it may be presumed that their interests coincide and that one opportunity to litigate issues that concern them in common should sufficiently protect both.

RESTATEMENT (SECOND) OF JUDGMENTS, § 59 cmt e.

Here, Quebbeman and Sandlin were co-counsel representing both Old Fort and Old Fort's members. It can thus be presumed that Old Fort and Old Fort's members' interests coincided in the matters for which Quebbeman and Sandlin undertook representation. The dissent notes that no case has applied judicial estoppel "to preclude one party from asserting a particular position because a different party had made a conflicting assertion or argument in a prior proceeding." Op. at 39. However, we do not believe under these circumstances that Old Fort and Old Fort's members are, in fact, different parties. Because the bankruptcy court relied upon Old Fort's allegations in making its decision to sell the assets, Old Fort's members cannot now deny those allegations or claim otherwise in this proceeding. Therefore, the trial court erred in awarding Old Fort's members the entire principal amount of $233,630, plus interest and late fees.

We find that the trial court erred in finding that judicial estoppel does not apply in this case. The judgment of the trial court is reversed and remanded for further proceedings consistent with this opinion.

Reversed and remanded.

ROBB, J., concurs.

BAKER, J., concurs in part and dissents in part with separate opinion.

BAKER, Judge, concurring in part and dissenting in part.

Although I agree that this cause should be remanded to the trial court, I reach this result for very different reasons than those the majority offers. I respectfully dissent from the majority opinion because I believe that judicial estoppel does not apply in this case, and that S & B has waived its argument regarding the motion for sale of assets, but that the award of interest was a windfall of unacceptable proportions, thus requiring a remand to the trial court.

## I. Judicial Estoppel

Judicial estoppel prevents a party from asserting a position in a legal proceeding inconsistent with one previously asserted. *Am. Family Mut. Ins. Co. v. Ginther*, 803 N.E.2d 224, 234 (Ind.Ct.App.2004).

> It is the general rule that allegations or admissions in pleadings in a former action or proceeding will ordinarily estop the party making them from denying their truth in a subsequent action or proceeding in which he is a party to the prejudice of his opponent where the usual elements of estoppel by conduct are present. Also, there must have been a determination of the prior action, or, at least, the allegations or admission must have been acted on by the court in which the pleadings were filed or by the parties claiming the estoppel.

*Id.* at 234–35 (quoting *Tobin v. McClellan*, 225 Ind. 335, 346–47, 73 N.E.2d 679, 684 (1947)). I also note that:

> A member, a manager, an agent, or an employee of a limited liability company is not personally liable for the debts, obligations, or liabilities of the limited liability company, whether arising in contract, tort, or otherwise, or for the acts or omissions of any other member, manager, agent, or employee of the limited liability company.

Ind.Code § 23–18–3–3(a).

S & B asserts that "[i]t is undisputed that Old Fort *and it members* took the position in Oldenberg's bankruptcy case that the Oldenberg Note and Mortgage were subject to 'significant and meritorious setoffs and claims....'" Appellant's Br. p. 16 (emphasis added). However, the record reveals that Old Fort, LLC, not its members, made representations to the bankruptcy court. Pl.Ex. 31; Pl.Ex. 33; Pl.Ex. 34; Tr. p. 47–48. Although identity of parties is not necessarily required for the application of judicial estoppel, *Wabash Grain, Inc. v. Smith*, 700 N.E.2d 234, 237 (Ind.Ct.App.1998), my research reveals no Indiana authority in which judicial estoppel has been used to preclude one party from asserting a particular position because a different party had made a conflicting assertion or argument in a prior proceeding. Inasmuch as the members of a limited liability company are "not personally liable for the debts, obligations, or liabilities of the limited liability company," I.C. § 23–18–3–3(a), I would hold that the members of Old Fort are not judicially estopped from asserting an allegedly contrary position.

Moreover, I note that the positions that S & B complains of are not inconsistent. Old Fort alleged before the bankruptcy court that it had been damaged by Oldenberg's behavior because they had to pay for the real estate in Oldenberg's stead. This is not inconsistent with the assertion of Old Fort's members that they had been damaged by Oldenberg's behavior to the sum of $233,630 because they were forced either to buy out the mortgage or bring a useless claim against a defendant who was liquidating. Thus, I would find that the trial court correctly found that judicial estoppel did not apply in this case.

## II. Award of Principal Amount

Having concluded that judicial estoppel does not apply here, I would address S & B's other arguments. S & B also contends that the trial court erred in awarding Old Fort a judgment for the entire original $233,630 principal amount of the Oldenberg Note and Mortgage. Specifically, S & B argues that because Old Fort's members are judicially estopped to deny in this action the representations they made to the bankruptcy court in order to obtain the Oldenberg Note and Mortgage for the agreed price of $50,000, they cannot now receive a judgment of more than $50,000.

However, because I would find that judicial estoppel· does not apply in this case, S & B's argument must fail.

### III. Award of $3.8 Million in Interest

Finally, S & B avers that the trial court erred by awarding to Old Fort's members $3.8 million in default interest and late fees on a principal debt of only $233,630. Specifically, S & B contends that the trial court failed to make any specific findings regarding its award of interest and that the award was an impermissible penalty.

Old Fort concedes in its appellate brief that the trial court improperly awarded the principal amount in addition to the $3.8 million, which was a total figure of principal and interest. Nonetheless, Old Fort asserts that the trial court could properly award the principal amount plus $3,575,493.09 in interest. However, the trial court in this case made no findings of fact on this issue whatsoever despite S & B's request for special findings of fact pursuant to Trial Rule 52(A). When properly requested, a trial court is required to make complete special findings sufficient to disclose a valid basis under the issues for the legal result reached in the judgment. *Speed v. Old Fort Supply Co., Inc.,* 737 N.E.2d 1217, 1220 (Ind.Ct.App.2000). I would therefore remand to the trial court and order that special findings of fact be entered on this issue, and further order that this portion of the award be reconsidered.

That said, I also note that an award of $3.5 million on a principal amount of $233,630 appears to be a penalty of outrageous proportions.· The Oldenberg Note and Mortgage provides that it is to be governed by the law of the Commonwealth of Kentucky. By way of comparison, the case of *In re Yost,* 54 B.R. 818 (Bankr. W.D.Ky.1985), involved a five-year oil equipment lease under which the total rent due was $495,000. The defendant defaulted on the lease when $378,160 remained of the principal balance. The liquidated damages provision in the lease provided that the lessor would have received "payment for 27 months of unearned rent and over $186,000 in late charges calculated at 24% per annum." *Id.* at 822. Because the monthly rental payment was $8,250, this provision would therefore have entitled the plaintiff to recover $408,750 in liquidated damages.[1] The bankruptcy court called this "a windfall of unacceptable proportions." *Id.* at 822–23. If an award of liquidated damages that equals 83% of the total principal balance is an unacceptable windfall, surely an award of liquidated damages that is approximately eight and one half times greater than the principal amount is an impermissible penalty.[2]

In my view, in computing the amount of the award the trial court should have considered Kentucky Revised Statute section 360.040, which provides that a "judgment shall bear twelve percent (12%) interest compounded annually from its date." This rate of interest, calculated from the date of default, would result in liquidated damages that are far more reflective of the actual harm suffered than the penalty in the contract yielded. Thus, I would hold that the trial court should recalculate the award to the extent that the judgment does not reflect the imposition of such an outrageous penalty.

---

1.  ($8,250 × 27) + $186,000 = $408,750

2.  $422,870.30 × 8.5 = $3,594,397.55